

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-09-00055-CV

**CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION D/B/A CHRISTUS SPOHN
HOSPITAL CORPUS CHRISTI-SHORELINE,**                    **Appellant,**

**v.**

**SANDRA SANCHEZ AND OMAR ALEMAN,**                    **Appellees.**

## NUMBER 13-09-00092-CV

**EDWIN DEJESUS AND ALAIN NJOH,**                    **Appellants,**

**v.**

**SANDRA SANCHEZ AND OMAR ALEMAN,**                    **Appellees.**

## On appeal from the County Court at Law No. 3
## of Nueces County, Texas.

# O P I N I O N

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Opinion by Justice Rodriguez

This consolidated appeal involves the alleged sexual assault of a patient by nursing staff in a hospital intensive care unit (ICU).[1] Appellants Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Corpus Christi–Shoreline (Spohn-Shoreline), Edwin DeJesus, and Alain Njoh challenge the trial court's denial of their motions to dismiss a lawsuit filed by appellees Sandra Sanchez and Omar Aleman for failure to serve an adequate expert report as required by section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)-(b) (Vernon Supp. 2009). By three issues on appeal, appellants argue that: (1) appellees' claims are health care liability claims; (2) appellees' expert reports did not constitute a good-faith effort to comply with the statute and were fatally deficient; and (3) section 74.351's expert report requirement is constitutional under the United States and Texas Constitutions. We affirm.

## I. BACKGROUND

In October 2007, Sanchez underwent spinal fusion surgery at Spohn-Shoreline. She was recovering in the ICU when she alleges that Njoh and DeJesus, a registered nurse and a certified nurse's assistant, entered her room and made unwanted sexual advances toward her. Sanchez alleges that one of the men undressed her and exposed her body for the other to see. She claims that they turned her over using their hands instead of a turning pad and, while they were moving her from the bed to a chair in her

---

[1] This opinion consolidates the Court's analysis of both appeals. *See* TEX. R. APP. P. 47.1.

room, they danced with her.  Sanchez alleges that during these physical contacts, Njoh and DeJesus were making sexual overtures and comments and that the improper conduct continued until she was discharged from the hospital a few days later.

In February 2008, appellees sued Spohn-Shoreline for negligent hiring, supervision, training, and retention of its employees and vicarious liability for the conduct of Njoh and DeJesus.  Appellees timely served the expert report and curriculum vitae of Laura Burchell-Henson, a registered nurse.[2]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).  Spohn-Shoreline filed objections to the report and a motion to dismiss appellees' lawsuit on the basis that their expert report did not constitute a good-faith effort to comply with the requirements of the statute.  Appellees responded to the motion, arguing that their claims were not health care liability claims subject to section 74.351 and that the expert report requirement was unconstitutional under the United States and Texas Constitutions.  In August 2008, appellees amended their petition to add causes of action against DeJesus and Njoh, in their individual capacities, for assault and intentional infliction of emotional distress.  After the trial court granted appellees an extension of time to amend their expert report, appellees filed a report by George S. Glass, M.D.  Spohn-Shoreline filed objections to the second report and all appellants filed motions to dismiss the suit for failure to file an adequate expert report.  The trial court denied both motions to dismiss, and these appeals ensued.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (authorizing an interlocutory appeal of the denial of a motion to dismiss filed under section 74.351(b)).

---

[2] Appellees maintain that their claims are not health care liability claims and that they served an expert report in an "abundance of caution" to preserve their rights to proceed with the lawsuit.

## II. DISCUSSION

### A. Health Care Liability Claims

By the first issue, appellants assert that appellees' claims are health care liability claims governed by chapter 74 of the civil practice and remedies code. Specifically, appellants argue that the underlying nature of appellees' claims is that appellants breached the standards of care and safety owed to Sanchez. With regard to appellees' claims against Spohn-Shoreline, we agree. However, we cannot so conclude with respect to appellees' claims against Njoh and DeJesus in their individual capacities.

#### 1. Standard of Review and Applicable Law

"[W]hether a claim is a health care liability claim pursuant to section 74.351 is a question of law and is reviewed de novo." *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 773 (Tex. App.–Corpus Christi 2006, pet. denied). A health care liability claim is defined as:

> [A] cause of action against a health care provider . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2005).[3] "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005). Standards of

---

[3] The statute's definition of health care provider includes hospitals, registered nurses, and employees acting in the course and scope of their employment with the health care provider. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11)(G), (12)(A)(i), (12)(B)(ii) (Vernon 2005).

4

safety implicate claimants' "exposure to unreasonably dangerous or defective conditions or things" in the course of their care. *Marks v. St. Luke's Episcopal Hosp.*, No. 07-0783, 2009 WL 2667801, at *8 (Tex. Aug. 28, 2009). The necessity of expert testimony is an important factor in determining whether the plaintiff's claim is inseparable from the rendition of health care. *Diversicare*, 185 S.W.3d at 848.

In determining whether appellees' claims are indeed health care liability claims, we focus on the "gravamen," or underlying nature, of the claim. *Id.* "[W]e are not bound by the form of the pleading," and the nature of the claim is not determined simply by the status of the defendant or the place of injury. *Id.*; *see Marks*, 2009 WL 2667801, at *8. Instead, "it is the cause of the injury and its relationship to medical or professional judgment that determines" the nature of the claim and the applicability of the health care liability statute. *Marks*, 2009 WL 2667801, at *8.

### 2. Claims against Njoh and DeJesus

Njoh and DeJesus argue that appellees' claims against them for assault and intentional infliction of emotional distress actually center on their rendering of health care services to Sanchez. They contend that Sanchez's allegations—that they undressed her so they could view her naked body, moved her with their hands instead of a turning pad, and danced with her while they were moving her from the bed to a chair—are all subjective interpretations of what, in reality, were specific tasks routinely performed by nursing staff, i.e. changing her clothes in preparation for the doctor, turning her over in her bed, and helping her to the chair in her room. Njoh and DeJesus argue that Sanchez's differing perception of the conduct does not take her claims outside the confines of the health care liability statute. We disagree.

5

Although we acknowledge that the previously described tasks may be part and parcel of the care given to hospital patients by nursing staff, we do not view the conduct challenged by appellees in isolation from the surrounding circumstances, as do Njoh and DeJesus. Because in addition to describing the undressing, turning over, and moving of Sanchez, appellees also allege that Njoh and DeJesus made sexual overtures toward Sanchez in the process of performing these tasks. Appellees claim that Njoh and DeJesus commented to Sanchez about her body while they were undressing her and allegedly danced with her and, at one point, even tried to climb in the bed with her. Appellees further allege that one of the two wrote "I love you" on the white board in Sanchez's room. We would be remiss to conclude that such conduct was related to the health care being provided to Sanchez or somehow involved the professional judgment of Njoh and DeJesus. *See Jones v. Khorsandi*, 148 S.W.3d 201, 206 (Tex. App.–Eastland 2004, pet. denied) (holding that allegations of sexual assault against a doctor did not involve "a breach of the applicable standards of care for health care providers").

Appellees' amended petition alleges causes of action against Njoh and DeJesus for assault and intentional infliction of emotion distress, and we conclude that the underlying nature of appellees' claims, indeed, rests squarely in these intentional actions that had "nothing to do with a health care provider's lapse in professional judgment or failure to protect a patient due to an absence of supervision or monitoring." *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 354 (Tex. App.–San Antonio 2008, no pet.); *see Jones*, 148 S.W.3d at 206. "It would defy logic to suggest that a sexual assault 'is an inseparable part of the rendition of medical care' or a departure from accepted standards of care." *Holguin*, 256 S.W.3d at 353 (citing *Diversicare*, 185 S.W.3d at 848). When a claim is

based on the injurious actions of an individual unrelated to the provision of health care, that individual cannot hide behind the procedural safeguards of chapter 74 merely because he or she was also a health care provider at the time of the assault or other harmful conduct. *See id.* (reasoning that the plaintiff's claim that his doctor sexually assaulted him was not a health care liability claim because the allegation was not that the doctor had negligently allowed the assault to occur, but rather, that the doctor injured the plaintiff "by his own actions"). Appellees' claims against Njoh and DeJesus in their individual capacities are, therefore, not health care liability claims, and we overrule the first issue as it applies to Njoh and DeJesus.[4]

### 3. Claims against Spohn-Shoreline

Similarly, Spohn-Shoreline contends that the underlying nature of appellees' claims is that it did not care for Sanchez within the accepted standards of care and safety. However, unlike appellees' claims against Njoh and DeJesus, appellees' claims against Spohn-Shoreline are based on negligence, implicate the standards of care and safety contemplated by chapter 74, and directly relate to its rendering of health care to Sanchez. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see also Stradley*, 210 S.W.3d at 775. In their amended petition, appellees allege that Spohn-Shoreline owed a duty to Sanchez "to provide a reasonably safe recovery environment free from offensive contact" and that Spohn-Shoreline "breached this duty by failing to properly hire, supervise, train, and retain its employees." In other words, appellees' claims are that Spohn-Shoreline

---

[4] Having decided that appellees' claims against Njoh and DeJesus are not health care liability claims, we need not reach Njoh and DeJesus's contentions regarding the adequacy of appellees' expert reports or concerning the constitutionality of the expert report requirement. *See* TEX. R. APP. P. 47.1.

failed to protect her from the alleged unwanted sexual advances made by Njoh and DeJesus.

Decisions regarding the protection of patients and the supervision and monitoring of staff involve professional judgment, *see Diversicare*, 185 S.W.3d at 851, and "[i]t follows that proper staffing for the care and protection of patients is related to and part of the rendition of health care." *Holguin*, 256 S.W.3d at 356. Moreover, determining "the appropriate number, training, and certifications of medical professionals necessary to care for and protect patients in weakened conditions" requires health care expertise, which is but another indicator that staffing decisions are inseparable from the provision of health care. *Diversicare*, 185 S.W.3d at 848, 851. Thus, as here, when a patient is injured because of an alleged lapse in this professional decision-making, the lawsuit complaining of that injury is a health care liability claim. *See id.* at 851.

Appellees respond that their claim against Spohn-Shoreline for vicarious liability, in particular, is not a health care liability claim subject to the expert report requirement. However, Texas courts have clearly held that a plaintiff cannot circumvent the expert report requirement by artfully pleading her health care liability claim based upon the negligence of the health care provider as some other cause of action, such as vicarious liability. *See Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34-35 (Tex. App.–El Paso 2006, no pet.); *Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 140-41 (Tex. App.–Eastland 2006, no pet.). Appellees' claim is not that Spohn-Shoreline, through its employees, committed the sexual assault. Instead, despite the recasting of their claim as common law vicarious liability, the underlying nature

8

of appellees' claim is, nonetheless, that "through lapses in professional judgment and treatment [Spohn-Shoreline] negligently allowed the sexual assault to occur." *Diversicare*, 185 S.W.3d at 851; *see Harrison*, 206 S.W.3d at 141. We are, therefore, unpersuaded by appellees' vicarious liability argument.

We conclude that the "gravamen" of appellees' claims is that Spohn-Shoreline breached the standards of care and safety owed to Sanchez by failing to protect her from the allegedly assaultive conduct of its nursing staff. *See Marks*, 2009 WL 2667801, at *8. The complained-of conduct was an inseparable part of the care provided to Sanchez as a patient at Spohn-Shoreline, and appellees' claims against Spohn-Shoreline therefore constituted health care liability claims subject to the expert report requirement of section 74.351. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). We sustain the first issue as it applies to Spohn-Shoreline.

## B. Expert Reports

In the second issue, Spohn-Shoreline argues that appellees' expert reports were fatally deficient.[5]

---

[5] By a sub-issue, Spohn-Shoreline complains that the trial court erred in granting appellees' request for a thirty-day extension to amend the report of Nurse Burchell-Henson. Spohn-Shoreline argues that because the only expert report served by appellees within the 120-day deadline was authored by a nurse who, under the express terms of the statute, cannot offer an opinion regarding causation, appellees effectively failed to serve any expert report on Spohn-Shoreline within the time frame required by section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) ("If an expert report has not been served within the period specified . . . because elements of the report are found deficient, the court may grant one thirty-day extension to the claimant in order to cure the deficiency."). In other words, Spohn-Shoreline argues that the report by Nurse Burchell-Henson was not merely deficient but, rather, no report at all and that, even if they were entitled to a thirty-day extension, appellees could use the extension only to amend the Burchell-Henson report, not to file a new report by a separate expert. However, the Texas Supreme Court has held that objections to a nurse's qualifications to act as an expert in a health care liability claim go to the sufficiency of the report and not to its existence. *Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007). Moreover, appellees were well within their rights to supplement Nurse Burchell-Henson's report with a report on causation by Dr. Glass, because deficiencies in an expert report can be cured during the thirty-day extension period by serving a report by a separate expert. *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008). As such, we are unpersuaded by Spohn-Shoreline's argument and overrule the second issue to the extent that it challenges the trial court's decision to grant appellees a thirty-day extension.

### 1. Standard of Review and Applicable Law

We review a trial court's decision on a motion to dismiss under section 74.351 of the civil practice and remedies code for abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). The trial court's ruling is arbitrary and unreasonable only if "the appellant establishes that the trial court could reasonably have reached only one decision." *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App.–Corpus Christi 2004, no pet.).

Under section 74.351 of the Texas Civil Practice and Remedies Code, a claimant must "serve on each party or the party's attorney" an expert report and curriculum vitae "not later than the 120th day after the date the original petition was filed." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6).

In our review of the expert report, we are limited to the four corners of the report in determining whether the report manifests a good-faith effort to comply with the statutory definition of an expert report. *Palacios*, 46 S.W.3d at 878; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*) (requiring that the trial court "grant a motion challenging the

10

adequacy of the expert report only if appears to the court, after hearing, that the report does not represent an objective good faith effort to comply" with the statutory definition). "Nothing in [section 74.351] should be construed to mean that a single expert report must address all liability and causation issues . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(i). Moreover, the reports "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878; *see Jernigan*, 195 S.W.3d at 93. If the expert report puts the defendant on notice of the specific conduct complained of and provides the trial court a basis on which to conclude the claims have merit, the report represents a good-faith effort to comply with the statute. *Palacios*, 46 S.W.3d at 879.

### 2. Analysis

Spohn-Shoreline first argues that Nurse Burchell-Henson's report did not adequately set forth the standard of care and/or safety and breach because the report is conclusory, speculative, and does not differentiate between the standards of care applicable to Spohn-Shoreline as opposed to the individual defendants. *See Taylor*, 169 S.W.3d at 244 ("An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard . . . ."). Spohn-Shoreline further argues that the report does not provide specific information about what it should have done differently. *See Palacios*, 46 S.W.3d at 880 (holding that a "fair summary" of the applicable standard of care and breach identifies the type of care expected but not rendered). We disagree.

Nurse Burchell-Henson's report states that the "standard of care requires that the hospital and its nursing staff provide adequate supervision to their certified nursing

11

assistants and licensed nursing personnel." The report further states that the "standard of care requires that the hospital and its nursing staff protect their patients from sexual harassment and abuse." It is clear to this Court that, although she references the "nursing staff" in these articulated standards of care, Nurse Burchell-Henson is describing the duties owed by Spohn-Shoreline to its patients. *See Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.–Dallas 2006, no pet.) (holding that an expert report need not explicitly refer to the hospital employer by name where a plaintiff is asserting vicarious, and not direct, liability, and where it is clear that the conduct of the hospital employer is implicated). By specifying that the hospital is to adequately supervise its "certified nursing assistants and licensed nursing personnel," Nurse Burchell-Henson effectively differentiates between Spohn-Shoreline and the individual defendants.

Moreover, we conclude that Nurse Burchell-Henson identified the care that was expected but not rendered under the applicable standard of care. She states that Spohn-Shoreline "[f]ailed to provide adequate supervision to the CNA [DeJesus] and the RN [Njoh]," "[f]ailed to protect Ms. Sanchez from sexual harassment and sexual abuse," and "[f]ailed to provide safety to Ms. Sanchez in her immediate post operative [sic] when the CNA lifted Ms. Sanchez up and began dancing with her." She explains the specific tasks and responsibilities required of Spohn-Shoreline and notes that it failed to perform as such. In short, the report put Spohn-Shoreline on notice of the specific complained-of conduct, and we cannot say that the trial court abused its discretion in finding that the report sufficiently set forth the standard of care and breach. *See Palacios*, 46 S.W.3d at 879.

Spohn-Shoreline next complains that the report of Dr. Glass did not establish the causation element required under the statute. *See Bowie Mem'l Hosp. v. Wright*, 79

12

S.W.3d 48, 52 (Tex. 2002) (holding that an expert report "cannot merely state the expert's conclusions" regarding causation; rather, the basis of the expert's statements must link his conclusions to the facts). Specifically, Spohn-Shoreline contends that Dr. Glass's report is conclusory, does not show that Spohn-Shoreline's conduct caused the events upon which appellees' claims are based, and does not differentiate between the conduct of Spohn-Shoreline, versus that of Njoh and DeJesus, as the cause of injury. Again, we disagree.

In his report, Dr. Glass opines at length about the alleged conduct of Njoh and DeJesus and describes the depression, severe anxiety, panic, nightmares, and social isolation that Sanchez suffered following her stay at Spohn-Shoreline. Dr. Glass observes that Sanchez was "unable to care [sic] and protect herself [sic] felt vulnerable, harassed by the people who were supposed to be caring for her in the hospital ICU." He then concludes that: "The fact that [Sanchez] was vulnerable, unable to protect herself, and felt as if her person was violated has caused her to now have symptoms of Major Depression and Post Traumatic Stress Disorder."

Dr. Glass's emphasis on Sanchez's vulnerable condition, in particular, puts Spohn-Shoreline on notice of the conditions called into question by appellees' claims. *See Palacios*, 46 S.W.3d at 879; *Wright*, 79 S.W.3d at 53 (agreeing that plaintiffs are not required to use any sort of magic words to meet the section 74.351 expert report obligation). Read in combination with Nurse Burchell-Henson's report on the standard of care, which provided that Spohn-Shoreline had a duty to provide a safe recovery environment for its vulnerable post-operative patients, we conclude that Dr. Glass sufficiently linked Sanchez's assault to Spohn-Shoreline's failure to protect her from the

13

assaultive conduct of Njoh and DeJesus.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (allowing standard of care and causation to be established in separate reports); *see also Wright*, 79 S.W.3d at 52.  The trial court did not abuse its discretion in finding the report sufficient as to causation.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

Based on the foregoing, we conclude that the expert reports of Nurse Burchell-Henson and Dr. Glass adequately set forth the standard of care, identified how Spohn-Shoreline breached the standard, and explained how the breach caused the injuries claimed by appellees.  *See Palacios*, 46 S.W.3d at 878.  The reports constituted a good faith effort to comply with the statute because they put Spohn-Shoreline on notice of the specific conduct complained of and provided the trial court with a basis on which to conclude appellees' claims have merit.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*); *Palacios*, 46 S.W.3d at 879.  We overrule the second issue.[6]

### III.  CONCLUSION

The orders of the trial court denying appellants' motions to dismiss are affirmed.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed this
29th day of October, 2009.

---

[6] Having concluded that appellees' expert reports met the requirements of section 74.351 and that the trial court did not err in denying Spohn-Shoreline's motion to dismiss, we need not reach its third issue regarding appellees' argument that the expert report requirement is unconstitutional. *See* TEX. R. APP. P. 47.1.

14