Opinion issued December 23, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00374-CV

———————————

Heriberto Sedeno, P.A., Appellant

V.

Genoveva
Mijares, Appellee



 



 

On Appeal from the 151st District
Court

Harris County, Texas



Trial Court Case No. 0767945

 



 

O P I N I O N

          Appellant, Heriberto Sedeno, P.A.
(“Sedeno, P.A.”), appeals the trial court’s denial of its motion to dismiss the
claims of appellee, Genoveva Mijares, against Sedeno, P.A. under section 74.351
of the Texas Civil Practice and Remedies Code.[1]  In two issues, Sedeno, P.A. argues that it
was entitled to a mandatory dismissal of Mijares’s claims against it because
(1) her claims against Sedeno, P.A. are health care liability claims that
require service of an expert report under section 74.351 and (2) Mijares
failed to timely file an expert report.

          We
reverse.

Background

          Mijares
filed her original petition on November 5, 2007, against Heriberto Sedeno, M.D.
(“Dr. Sedeno”) and Sedeno, P.A., alleging that Dr. Sedeno sexually assaulted
her when she visited his office to address her problems with high blood
pressure.  Mijares pled causes of action
for sexual assault and intentional infliction of emotional distress against Dr.
Sedeno and against Sedeno, P.A., arguing that it was “jointly and severally
liable for the actions of its officer and/or agent” Dr. Sedeno.

Mijares filed a second amended
petition on February 25, 2008, adding a cause of action against both Dr. Sedeno
and Sedeno, P.A. for gross negligence. 
She alleged that Sedeno, P.A. “allowed [Dr. Sedeno] to be unsupervised
with female patients despite its knowledge of [Dr. Sedeno’s] sexual
proclivities” and that such gross negligence was the proximate cause of her
injuries.  On March 28, 2008, and again
on September 26, 2008, the trial court entered a protective order in the civil
case preventing discovery until the resolution of the criminal charges against
Dr. Sedeno.[2]  Trial of the civil case was set for November
2009.  However, on October 30, 2009,
Sedeno filed a suggestion of bankruptcy and the trial court proceedings were
stayed.[3]  Once the stay was lifted, trial was reset for
May 2010.

On February 8, 2010, the parties
entered into an agreed docket control order that set May 10, 2010, as the date
by which all dispositive motions and pleas must be set for hearing or
submission.

On February 12, 2010, Mijares filed
her third amended petition, which raised for the first time claims of
negligence against Sedeno, P.A.  On March
29, 2010, Mijares filed her fourth amended petition, in which she alleged that,
on the date of the assault, an employee of Sedeno, P.A. led Mijares into an
examination room and left her there “alone and isolated” and that Dr. Sedeno
“entered the examining room alone and unsupervised.”

Mijares alleged that:

[Dr. Sedeno then] requested
that [Mijares] pull down her skirt and bend over the examination table so that
he could administer a B12 shot into her hip. 
Although confused by his request, [Mijares] followed [Dr. Sedeno’s]
orders.

While [Mijares] was bent
over the examination table, [Dr. Sedeno] pulled his pants down and raped
her.  [Dr. Sedeno] subsequently
ejaculated onto [Mijares] and her clothing and quickly left the room.

 

Mijares’s fourth amended petition
reasserted her causes of action for sexual assault and intentional infliction
of emotional distress against Dr. Sedeno and Sedeno, P.A.

Mijares also alleged negligence
against Sedeno, P.A., claiming that it “owed a duty to [Mijares] to exercise
reasonable care to provide security and safety to [Mijares] while she was
visiting” the office.  Her fourth amended
petition stated that Sedeno, P.A. “retained control over the premises, business
and safety operations of the offices,” that it “had knowledge that other
similar occurrences had occurred in the immediate vicinity,” that it knew or
should have known that Dr. Sedeno was “suffering from depression and other
mental and psychiatric conditions that made him mentally or emotionally
incompetent to perform the functions of an unsupervised physicion [sic],” that Dr. Sedeno was “taking
numerous sample medications from the clinic without a prescription” and “had a
continuing problem of drug usage that affected his ability to function as a
medical doctor,” that Sedeno, P.A. knew or should have known that Dr. Sedeno
“was not mentally or emotionally competent to safely perform unsupervised
activity in the clinic with females” and that he “would not be able to respect
the person and/or body of [Mijares] while she was isolated in an examining
room,” and that Sedeno, P.A. “owed a duty to [Mijares] not to place her in a
situation that the risk of sexual abuse was heightened.”  The petition stated:

The assault described above
occurred directly and proximately as a result of the negligence of [Sedeno,
P.A.] in each and all of the following particulars:

 

1.     In failing to keep proper
safety and security measures on the premises;

 

2.     In failing to have female
clients accompanied by a female staff member at all times;

 

3.     In failing to make the
office secure from sexual predators;

 

4.     In failing to properly
monitor clients/patients while at the office;

 

5.     In failing to provide proper
supervision over its employee [Dr. Sedeno]; and

 

6.     In creating an unsafe
environment that allowed an unstable male to be alone with [Mijares] in an
isolated room.

 

Mijares alleged a cause of action
for invasion of privacy rights against Dr. Sedeno and Sedeno, P.A. based on Dr.
Sedeno’s actions.  Finally, Mijares
alleged a cause of action for gross negligence against Dr. Sedeno and Sedeno,
P.A., again based on Dr. Sedeno’s sexual assault and Sedeno, P.A.’s wrongful
conduct in allowing Dr. Sedeno “to be unsupervised with female clients despite
its knowledge of [Dr. Sedeno’s] sexually deviant proclivities.” 

On May 5, 2010, Sedeno, P.A. filed
its motion to dismiss, arguing that Mijares’s claims were health care liability
claims covered by Chapter 74 of the Civil Practice and Remedies Code, that
Mijares had failed to file an expert report as required by section 74.351, and that,
thus, Sedeno, P.A. was entitled to mandatory dismissal of Mijares’s claims
against it.  Mijares responded, arguing
in part that her claims were not health care liability claims and that Sedeno,
P.A.’s motion to dismiss was untimely pursuant to an agreed docket control
order filed with the trial court on February 8, 2010, which required all
dispositive motions and pleas to be set for hearing or submission by May 10,
2010.  Sedeno, P.A. unsuccessfully
attempted to schedule a hearing on the motion to dismiss for May 10, 2010.  The hearing was eventually held on May 12,
2010.

On May 12, 2010, the trial court
signed an order denying Sedeno, P.A.’s motion to dismiss.  The order contained the hand-written notation
that the motion was denied “because the motion was not set for hearing in a
timely manner under the agreed DCO.”

On May 14, 2010, Sedeno, P.A. filed
a motion for reconsideration, asking the trial court to reconsider its denial
of the motion to dismiss, arguing that the docket control order does not affect
its right to mandatory dismissal, that there is no deadline for filing a motion
to dismiss pursuant to section 74.351(b), that all of Mijares’s claims were
health care liability claims, and that she failed to timely file an expert
report because the 120-day deadline runs from the filing of the original petition,
not amended petitions.

          On
May 17, 2010, the trial court denied Sedeno, P.A.’s motion for
reconsideration.  The trial court stated
that it believed the motion for reconsideration should be denied “for at least
two reasons.”  The trial court stated its
belief that Sedeno, P.A. waived its right to file the motion to dismiss, or,
alternatively, that “the 120[-day] report period has likely not expired and
thus [Sedeno, P.A.’s] argument is . . . premature.”  Specifically, the trial court stated:

 [T]he parties in this case have operated under
the working assumption that the issues addressed by the Motion to Dismiss were
raised for the first time no earlier than in [Mijares’s] Third Amended
Petition.  The Third Amended Petition was
filed only 93 days ago (approximately) and thus the 120[-day] expert report
deadline has not passed.  This is another
reason to deny Sedeno P.A.’s Motion.

 

Sedeno, P.A. filed its notice of
appeal on May 18, 2010.

Analysis

          In
its first issue, Sedeno, P.A. argues that Mijares’s claims against it are
health care liability claims requiring an expert report.  In its second issue, Sedeno, P.A. argues that
the trial court erred in denying its motion to dismiss because Mijares failed
to timely file an expert report as required by section 74.351 of the Civil
Practice and Remedies Code.

A.      Standard of
Review

          We
review a trial court’s decision on a motion to dismiss a suit under Chapter 74
for an abuse of discretion.  Am. Transitional Care Ctrs. v. Palacios,
46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of discretion standard under
predecessor statute).  However, to the
extent resolution of this issue requires interpretation of the statute itself
or resolution of another question of law, like whether the statute applies to a
particular claim, we review under a de novo standard.  Holguin
v. Laredo Reg’l Med. Ctr., L.P., 256 S.W.3d 349, 352 (Tex. App.—San Antonio
2008, no pet.) (citing NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 32 (Tex. App.—El Paso 2006, no pet.)
and Brown v. Villegas, 202 S.W.3d
803, 805 (Tex. App.—San Antonio 2006, no pet.)).  Whether a claim is a health care liability
claim is a question of law.  Christus Spohn Health Sys. Corp. v. Sanchez,
299 S.W.3d 868, 873 (Tex. App.—Corpus Christi 2009, pet. denied); Holguin, 256 S.W.3d at 352.

B.      Substantive Law

          Section
74.351 of the Civil Practice and Remedies Code requires:

In a health care liability
claim, a claimant shall, not later than the 120th day after the date the
original petition was filed, serve on each party or the party’s attorney one or
more expert reports, with a curriculum vitae of each expert listed in the
report for each physician or health care provider against whom liability is
asserted.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2010).  If the plaintiff fails to serve an expert
report, the trial court must, on the motion of the affected health care
provider, dismiss the plaintiff’s claim with prejudice and award attorney’s
fees.  Id. § 74.351(b).  Thus, the
expert report requirements apply to claims that fall within the statutory
definition of “health care liability claim.” 
Holguin, 256 S.W.3d at 352
(citing Diversicare Gen. Partner, Inc. v.
Rubio, 185 S.W.3d 842, 847–48 (Tex. 2005)).

          A
health care liability claim is:

[A] cause of action against
a health care provider . . . for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care, or health care, or safety or
professional or administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the claimant’s
claim or cause of action sounds in tort or contract.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005).  A health care provider is:

[A]ny person, partnership,
professional association, corporation, facility, or institution duly licensed,
certified, registered, or chartered by the State of Texas to provide health
care. . . .

 

Id. §
74.001(a)(12).  

A cause of action alleges a
departure from accepted standards of medical care or health care if the act or
omission complained of is an inseparable part of the rendition of medical
services.  Diversicare, 185 S.W.3d at 848. 
An alleged departure from “accepted standards of medical care or health
care” implicates the professional standards of these respective care
givers.  Marks v. St. Luke’s Episcopal Hosp., 319 S.W.3d 658, 662 (Tex.
2010) (citing Diversicare, 185 S.W.3d
at 850 (observing that “[t]he health care standard applies the ordinary care of
trained and experienced medical professionals to the treatment of patients
entrusted to them”)).  An alleged
departure from “standards of . . . safety” is implicated when the unsafe
condition or thing causing the injury to the patient is an inseparable or
integral part of the patient’s care or treatment.  Id.
at 664.

A health care liability claim
cannot be recast as another cause of action to avoid the requirements of
Chapter 74.  Diversicare, 185 S.W.3d. at
851.  Thus we look to the underlying
substance of a claim and not its form.  Marks, 319 S.W.3d at 665–66; see also Diversicare, 185 S.W.3d at 851
(holding that “essence” of claim, not form of pleadings, controls determination
of whether cause of action is health care liability claim).  

          In
Diversicare, the Texas Supreme Court
addressed the question of whether a nursing-home patient’s suit against the
nursing home for her sexual assault by another patient was a health care
liability claim.  185 S.W.3d at 845.  Specifically, the plaintiff in Diversicare alleged that the nursing
home was negligent in failing to provide sufficient staff and supervision to
prevent the assault.  Id. at 845.  In holding that the plaintiff’s claims were
health care liability claims, the supreme court observed that the nursing home
provided services to its patients that included supervision of daily
activities, routine examinations, monitoring of patients’ physical and mental
condition, administering medication, and meeting other “fundamental care
needs.”  Id. at 849.  It concluded
that rendition of these services, including the monitoring and protection of
the patient, as well as training and staffing policies, were “integral
components of Diversicare’s rendition of health care services.”  Id.
at 850.  The supreme court recognized
that “professional decisions on supervising or restraining patients at health
care facilities require medical judgment.” 
Id. at 852–53 (citing, e.g., Bell v. Sharp Cabrillo Hosp., 260 Cal.
Rptr. 886, 896 (Cal Ct. App. 1989) (“[T]he competent selection and review of
medical staff is precisely the type of professional service a hospital is
licensed and expected to provide, for it is in the business of providing
medical care to patients and protecting them from unreasonable risk of harm
while receiving medical treatment. . . . 
[T]he competent performance of this responsibility is “inextricably
interwoven” with delivering competent quality medical care to hospital patients.”)).  

          Subsequently,
other courts of appeals have applied the reasoning in Diversicare to claims arising from a health care provider’s sexual
assault of a patient.  In Holguin, the San Antonio Court of Appeals
held that while it “would defy logic to suggest that a sexual assault ‘is an
inseparable part of the rendition of medical care’ or a departure from accepted
standards of health care” in regard to the plaintiff’s suit against the
individual health care provider, the plaintiff’s suit for negligence and
vicarious liability against the hospital was a health care liability claim under
Chapter 74.[4]  256 S.W.3d at 353, 355–56.  The court reasoned that it “need not
determine if Holguin’s claim is a safety claim ‘directly related to health care’”;
rather, it relied on Diversicare in
stating that it “need only determine if the claim is one that is a departure
from accepted standards of safety applicable in the context of health or
medical care.”  Id. at 355.  It concluded
that the underlying nature of Holguin’s complaints was that the hospital failed
to protect its patients, that such claims “necessarily implicate acceptable
standards of safety pursuant to the definition of a health care liability
claim,” and that “[e]xpert testimony would be required for the safety claim
asserted by Holguin.”  Id. (citing Diversicare, 185 S.W.3d at 851 (“[I]t is not within the common
knowledge of the general public to determine the ability of patients in
weakened conditions to protect themselves, nor whether a potential target of an
attack in a healthcare facility should be better protected and by what
means.”)).  The Holguin court also concluded that Holguin’s claims alleged
departures from accepted standards of health care because Holguin alleged that
the hospital failed to properly hire, train, or supervise its staff.  Id.

In Christus Spohn, the Corpus Christi Court of Appeals held that the
plaintiff’s negligence claims against the hospital implicated “the standards of
care and safety contemplated by Chapter 74, and directly relate[d] to its rendering
of health care” to the plaintiff.  299
S.W.3d at 874.  The court held:

Decisions regarding the
protection of patients and the supervision and monitoring of staff involve
professional judgment, and “[i]t follows that proper staffing for the care and
protection of patients is related to and part of the rendition of health
care.”  Moreover, determining “the
appropriate number, training, and certifications of medical professionals
necessary to care for and protect patients in weakened conditions” requires
health care expertise, which is but another indicator that staffing decisions
are inseparable from the provision of health care.  Thus, as here, when a patient is injured
because of an alleged lapse in this professional decision-making, the lawsuit
complaining of that injury is a health care liability claim.

 

Id. at 875
(citing Diversicare, 185 S.W.3d at
848, 851 and Holguin, 256 S.W.3d at
356) (internal citations omitted).  The court concluded that the gravamen of the
plaintiff’s claim against the hospital was that it “breached the standards of
care and safety owed to [the plaintiff] by failing to protect her from the
allegedly assaultive conduct of its nursing staff” and that the complained-of
conduct “was an inseparable part of the care provided to [the plaintiff] as a
patient.”  Id.  Thus, the court
concluded that the plaintiff’s claims against the hospital were health care
liability claims.[5]  Id.;
see also Kidd, 214 S.W.3d at 31
(holding that claims arising from mental health technician’s alleged sexual
assault of patient were health care liability claims); Oak Park, Inc. v. Harrison, 206 S.W.3d 133, 135–41 (Tex.
App.—Eastland 2006, no pet.) (holding that claims against treatment center
arising from nurses’ and counselors’ alleged physical assault of patient were
health care liability claims); Buck v.
Blum, 130 S.W.3d 285, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.)
(holding patient’s claims against owners of medical clinic for negligence
arising from alleged assault and battery by neurologist were health care
liability claims because claims alleged that medical clinic “violated the
standards of care related to supervision of a medical doctor performing a
medical examination and the institution of procedures governing medical examinations”).

C.      Health Care
Liability Claims

          Here,
Sedeno, P.A. argues that beginning with her second amended petition, filed
February 25, 2008, Mijares alleged breaches of the standard of care by Sedeno,
P.A. in every pleading, including her fourth amended petition, which was the
“live” pleading at the time Sedeno, P.A. moved to dismiss the claims against it.

In her second amended petition,
Mijares alleged gross negligence against Sedeno, P.A. for allowing Dr. Sedeno
“to be unsupervised with female patients despite its knowledge of [Dr.
Sedeno’s] sexual proclivities.”  In her
third amended petition, Mijares alleged negligence against Sedeno, P.A. for its
own actions, arguing, among other things, that it was negligent in failing to
keep proper safety and security measures on the premises, in failing to have
female patients accompanied by a female staff member, in failing to properly
monitor patients while at the office, and in failing to provide proper
supervision over Dr. Sedeno.

          We
conclude that, as in Holguin and Christus Spohn, the gravamen of these
negligence claims against Sedeno, P.A. is that it breached the standards of
care and safety owed to Mijares by failing to protect her from the allegedly
assaultive conduct of Dr. Sedeno.  See Chistus Spohn, 299 S.W.3d at 875; Holguin, 256 S.W.3d at 355–56.  These
claims implicate Sedeno, P.A.’s professional decisions regarding the monitoring
and protection of the patient and its training and staffing policies and thus
are “integral components” of Sedeno, P.A.’s rendition of health care
services.  See Diversicare, 185 S.W.3d at 850.

Mijares argues that Sedeno, P.A. is not a healthcare
institution and should not be afforded the protections granted to healthcare
institutions.  She argues that Sedeno,
P.A., “as a lease holder of the premises, did not make the same judgment about
the care, treatment and protections of individual patients as a health care
institution” and that “if any judgments as to health care were involved they
would have been made by Dr. Sedeno.” 
However, Mijares alleged separate negligence and gross negligence claims
against Sedeno, P.A. for its own failures distinct from the alleged sexual
assault committed by Dr. Sedeno that do implicate a professional association’s
judgments regarding care, treatment, and protection of an individual
patient.  

We acknowledge that Sedeno, P.A. does not meet the definition
of a health care institution.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(11) (providing that health care
institution includes, among others, hospitals and nursing homes, but not
listing doctor’s offices or outpatient medical clinics).  However, it is clearly a health care
provider.  See id. § 74.001(12) (providing that “health care provider”
includes, among others, any professional association or health care
institution).  Section 74.351 requires
service of an expert report on “each physician or health care provider against
whom liability is asserted,” and does not make a distinction between health
care providers generally and a health care institution.  See id.
§ 74.351(a).  Thus, the provisions
of section 74.351 apply to Sedeno, P.A., as does case law construing that
section.  Therefore, we conclude that Mijares’s negligence claims are health care
liability claims.[6]  See Diversicare,
185 S.W.3d at 850.

          We
sustain Sedeno, P.A.’s first issue.

D.      Timely Expert
Report

          In
its second issue, Sedeno, P.A. argues that the trial court erred in denying its
motion to dismiss because Mijares failed to timely file an expert report, and
thus it was entitled to the mandatory dismissal and attorneys fees provided for
in section 74.351(b).

          Section
74.351(b) provides:

If, as to a defendant
physician or health care provider, an expert report has not been served within
the period specified by Subsection (a), the court, on the motion of the
affected physician or health care provider, shall . . . enter an order that:

 

(1)    awards to the affected
physician or health care provider reasonable attorney’s fees and costs of court
incurred by the physician or health care provider; and

 

(2)    dismisses the claim with
respect to the physician or health care provider with prejudice to the refiling
of the claim.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(b). 
“If a claimant fails to serve the report with the curriculum vitae on or
before the statutory deadline, and the affected physician or health care
provider files a motion to dismiss the claim under section 74.351(b), the court
has no alternative but to dismiss the claim with prejudice.”  Herrera
v. Seton Nw. Hosp., 212 S.W.3d 452, 457 (Tex. App.—Austin 2006, no pet.).

Mijares argues that even if we construe
her claims as health care liability claims, Sedeno P.A.’s motion to dismiss was
premature because the 120-day deadline had not yet passed.  Mijares argues that the deadline begins to
run from the filing of the petition that first alleges a health care liability
claim, while Sedeno, P.A. argues that the 120-day filing deadline runs from the
filing of the original petition.  Because
we have already determined that Mijares’s second amended petition, which was
filed February 25, 2008, and alleged gross negligence against Sedeno, P.A. for
allowing Dr. Sedeno to treat her while he was unsupervised, constituted a
health care liability claim, we need not address this argument.[7]  The 120-day deadline had passed regardless of
whether we calculate the deadline from the filing of Mijares’s original
petition or her second amended petition.

          Mijares
also argues that Sedeno, P.A. “failed to preserve any error for review by not
pleading the affirmative defense of Chapter 74.”  However, the authorities Mijares cited in her
brief do not support her contention that the dismissal provision in section
74.351 is an affirmative defense that must be pleaded by the defendant.  See
Tsai v. Wells, 725 S.W.2d 271, 275 (Tex. App.—Corpus Christi 1986, writ
ref’d n.r.e.) (holding that damage limit in predecessor to chapter 74 was
affirmative defense and that defendant’s failure to plead statutory damage
limit on judgment against physician operated as waiver to complain on appeal); Webster v. Johnson, 737 S.W.2d 884, 889
(Tex. App.—Houston [1st Dist.] 1987, writ denied) (holding same).  Nor could we find any authority suggesting
that Sedeno, P.A. was required to file any additional pleadings to invoke its
right to file a motion to dismiss pursuant to section 74.351.

Mijares also argues that Sedeno,
P.A.’s motion to dismiss was untimely because Sedeno, P.A. “waited 912 days
after it was served with [Mijares’s] Original Petition” to file its motion to
dismiss.  Chapter 74 provides no deadline
for filing a motion to dismiss pursuant to section 74.351, and the Texas
Supreme Court has specifically held that there is no statutory deadline to file
a motion to dismiss for failure to timely file an expert report.  See
Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003) (holding, under
predecessor to current statute, that defendant who waited almost two years to
move to dismiss case while participating in discovery and filing motion for
summary judgment and other pleadings did not waive his right to move for
dismissal for failure to comply with expert report requirement); see also Poland v. Grigore, 249 S.W.3d
607, 616 & n.7 (Tex. App.—Houston [1st
Dist.] 2008, no pet.) (holding “[S]ection 74.351(b)—which establishes the consequences for failure
[to timely serve] an expert report—contains no deadline by which a defendant physician or health care
provider may complain”) (citing Empowerment
Options, Inc. v. Easley, No. 09-06-148-CV, 2006 WL 3239527, at *4 (Tex.
App.—Beaumont Nov. 9, 2006, pet. denied) (mem. op.) (noting in dictum that “Chapter
74 imposes no deadline for filing a motion to dismiss” for failure to timely
serve an expert report) and Packard v.
Miller, No. 07-06-0454-CV, 2007 WL 1662279, at *2 (Tex. App.—Amarillo May
31, 2007, pet. denied) (mem. op.) (holding that defendant who waited almost 18
months to move to dismiss for failure to timely serve expert report was not
equitably estopped from seeking dismissal because “[t]he Legislature did not
include an explicit deadline for the filing of a motion to dismiss” under
section 74.351)).

Finally, Mijares argues that
Sedeno, P.A.’s motion to dismiss was untimely pursuant to the agreed docket control
order that required all dispositive motions to be set for hearing or submission
by May 10, 2010.  Sedeno, P.A. argues
that on May 7, 2010, the trial court tentatively set its motion for a hearing
on May 10, 2010, and thus it was timely under the docket control order,
regardless of Mijares’s refusal to appear on May 10, 2010—Mijares cited Sedeno, P.A.’s failure to comply
with notice provisions—that
postponed the hearing to May 12, 2010.

Civil Practice and Remedies Code section
74.002(a) provides, “In the event of a conflict between this chapter and
another law, including a rule of procedure or evidence or court rule, this
chapter controls to the extent of the conflict.”  Tex.
Civ. Prac. & Rem. Code Ann.
§ 74.002(a) (Vernon 2005).  Furthermore,
in Spectrum Healthcare Resources, Inc. v.
McDaniel, the Texas Supreme Court held that a generic docket control order agreed
to by the parties, which made no reference to the deadlines imposed by Chapter
74, did not establish the intent of the parties to extend the statutory expert
report deadline.  306 S.W.3d 249, 253–54
(Tex. 2010).  The supreme court reasoned
that the “section 74.351 threshold expert report has a unique purpose separate
and apart from the procedural rules relating to discovery and typical expert
reports” and that expert reports filed pursuant to Chapter 74 cannot be
categorized as either a testifying or consulting-only retained expert under the
Rules of Civil Procedure.  Id. at 253–54.  Thus, the court concluded that for an agreed
docket control order to extend the deadline to file an expert report, the order
must explicitly indicate the parties’ intention to extend the deadline and
reference that specific deadline.  Id. at 254.

Admittedly, this case is different
from Spectrum Healthcare in that
Mijares is arguing that the docket control order imposed a deadline for filing
a motion to dismiss pursuant to section 74.351. 
However, the reasoning in Spectrum
Health still applies because the mandatory dismissal provision in section
74.351(b) serves a different function from other grounds for dismissal
generally available under the Rules of Civil Procedure, just as the expert
report requirement of section 74.351(a) serves a different function from other
types of expert designations.  Here, the
parties made no indication that they intended for the agreed docket control
order to affect their rights under Chapter 74. 
Thus, Sedeno, P.A.’s right to mandatory dismissal in the event that
Mijares failed to timely file an expert report was not affected by the agreed
docket control order.  See Tex.
Civ. Prac. & Rem. Code § 74.002(a); Spectrum Healthcare, 306
S.W.3d at 253–54.

          We
conclude that the trial court erred in denying Sedeno, P.A.’s motion to dismiss
the negligence and gross negligence claims against it because it showed that
Mijares failed to timely serve an expert report on these health care liability
claims.  See Herrera, 212 S.W.3d at 457 (“If a claimant fails to serve the
report with the curriculum vitae on or before the statutory deadline, and the
affected physician or health care provider files a motion to dismiss the claim
under section 74.351(b), the court has no alternative but to dismiss the claim
with prejudice.”).  The trial court
properly denied dismissal of Mijares’s intentional tort and exemplary damages
claims against Sedeno, P.A. based upon its vicarious liability for Dr. Sedeno’s
sexual assault and intentional infliction of emotional distress.

          We
sustain Sedeno, P.A.’s second issue.

Conclusion

          We
reverse the order of the trial court and render judgment dismissing Mijares’s
negligence and gross negligence claims against Sedeno, P.A.  All other claims against Dr. Sedeno and
Sedeno, P.A. remain pending in the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

 











[1]           Chapter 74 of the Civil Practice and
Remedies Code governs medical liability. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–74.507 (Vernon
2005 & Supp. 2010).  Section 74.351
requires a plaintiff asserting a health care liability claim to file an expert report
for each health care provider against whom liability is asserted within 120
days of filing an original petition.  Id. § 74.351(a) (Vernon Supp.
2010).  If the plaintiff fails to file
such an expert report, the court is required to dismiss the suit and grant
attorney’s fees on the defendant’s motion. 
Id. § 74.351(b).

 





[2]           Dr. Sedeno was eventually sentenced to
community supervision for indecent exposure regarding his conduct toward
Mijares.

 





[3]           The suggestion of bankruptcy stated
that “Heriberto Sedeno, Heriberto Sedeno, M.D. also known as Heriberto Sedeno,
P.A. (“Debtor”)” filed for Chapter 7 bankruptcy in the Southern District of
Texas.





[4]           In Holguin,
the plaintiff sued Morales, the allegedly tortious employee of Laredo Regional
Medical Center, for his negligent failure to “control his sexual urges” and
asserted claims against Laredo Regional for vicarious liability and for its own
negligence in failing to protect Holguin from Morales.  Holguin
v. Laredo Reg’l Med. Ctr., L.P., 256 S.W.3d 349, 353 (Tex. App.—San Antonio
2008, no pet.).  The San Antonio Court of
Appeals held that the vicarious liability claim, based on Morales’s negligence,
was “nothing more than a recasting of” the direct negligence claim against Laredo
Regional.  Id. at 354.  Holguin did not
sue Morales for the intentional tort of sexual assault and assert vicarious
liability against Laredo Regional arising out of that claim.





[5]           In Christus
Spohn, Sanchez also sued two employees who allegedly committed the sexual
assault for assault and intentional infliction of emotional distress.  Christus
Spohn Health Sys. Corp. v. Sanchez, 299 S.W.3d 868, 872 (Tex. App.—Corpus
Christi 2009, pet. denied).  The Corpus
Christi Court of Appeals held that the underlying nature of these claims “rests
squarely in these intentional actions that had ‘nothing to do with a health
care provider’s lapse in professional judgment or failure to protect a patient
due to an absence of supervision or monitoring.’”  Id.
at 874 (quoting Holguin, 256 S.W.3d
at 354).  Sanchez did not claim that the
hospital, through its employees, committed sexual assault.  See id.
at 875 (“However, unlike appellees’ claims against [the employees], appellees’
claims against Spohn-Shoreline are based on
negligence . . . .”).





[6]           Mijares also argues that Sedeno, P.A.
is liable for Dr. Sedeno’s acts because Dr. Sedeno is the sole officer of
Sedeno, P.A.  However, in the claims at
issue here—her
negligence and gross negligence claims against Sedeno, P.A.—Mijares did not allege
that Sedeno, P.A., through its employee, committed the sexual assault.  Rather, she alleged claims against Sedeno,
P.A. for its own wrongful, negligent acts separate from those of Dr.
Sedeno.  Thus, the underlying nature of
Mijares’s complaint against Sedeno, P.A. in her negligence claims is that it
failed to properly exercise medical judgment to protect its patients and
provide proper supervision of its employees. 
See Christus Spohn, 299 S.W.3d
at 875 (holding that “despite the recasting of their claim as common law
vicarious liability, the underlying nature of appellees’ claim is, nonetheless,
that ‘through lapses in professional judgment and treatment [Spohn-Shoreline]
negligently allowed the sexual assault to occur’” and finding that such claims
were still properly considered health care liability claims requiring expert
report).





[7]           Mijares argues in her appellate brief
that the potential health care liability claims were raised for the first time
in her third amended petition and that Sedeno, P.A.’s motion to dismiss
specifically referenced the allegations in the fourth amended petition, and
thus, “the deadline to serve a report, at its earliest, was June 12,
2010.”  We disagree.  It is well-settled that a plaintiff cannot
circumvent the expert report requirement
by artfully pleading a health care liability claim based on negligence as some
other cause of action.  Diversicare Gen. Partner, Inc. v. Rubio,
185 S.W.3d 842, 851 (Tex. 2005); Christus
Spohn, 299 S.W.3d at 875.  Mijares’s
claim for gross negligence against Sedeno, P.A. implicated its professional decisions regarding the
monitoring and protection of the patient and its staffing policies, just as her
general negligence claims did, and thus implicated an “integral component” of
Sedeno, P.A.’s rendition of health care services.  See
Diversicare, 185 S.W.3d at 850.