v.

**Ahmad Abo KAYASS, Appellee**

**NO. 02-16-00248-CV**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: November 9, 2017

ATTORNEY FOR APPELLANT: JASON C.N. SMITH, LAW OFFICES OF JASON SMITH, FORT WORTH, TEXAS.

ATTORNEYS FOR APPELLEE: JAS BRAICH, KIRK D. WILLIS, LORIN M. SUBAR, THE WILLIS LAW GROUP, PLLC, DALLAS, TEXAS.

PANEL: WALKER; GABRIEL and PITTMAN, JJ.

## OPINION

MARK T. PITTMAN, JUSTICE

This appeal involves the alleged sexual assault by a physician of a nonpatient who went to an urgent care clinic to obtain medical treatment for her children. Appellant T.C. challenges the trial court's granting of a motion to dismiss filed by appellee Ahmad Abo Kayass for failure to serve an expert report as mandated by section 74.351 of the Texas Medical Liability Act (the Act). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (West 2017). Specifically, T.C. asserts that the trial court erred in granting the motion to dismiss because her claims against Kayass are not health care liability claims for which she would be required to file an expert report under the Act. For the reasons set forth herein, we agree and reverse and remand for further proceedings.

## I. BACKGROUND

On October 28, 2013, T.C. took her three children, twin two-year-old daughters and a five-year-old son, to an urgent care clinic to obtain medical care for her children. T.C. alleged that while she and her children were in the exam room, Kayass, a physician working at the urgent care clinic, sexually assaulted her in front of her children. T.C.—who was not a patient and was not being examined—claimed that Kayass intentionally and knowingly assaulted her without her consent when he groped her right breast and right thigh multiple times, "kissed her on the lips," "forced [her] to touch and/or rub on his penis," and "licked her face." T.C. also alleged that shortly after leaving the urgent care clinic, Kayass obtained her telephone number from a medical chart and sent her a "harassing message" via text.

T.C. reported the alleged incident to the Fort Worth Police Department the next day. Kayass was charged, and on April 30, 2015, he entered a plea of nolo contender to the offense of disorderly conduct and was placed on community supervision for three months.

On October 27, 2015, T.C. filed her original petition against defendants Kayass; Cook Children's Health Care System (Cook Children's); EmCare Holdings, Inc.

(EmCare); and EmCare HoldCo, Inc. (EmCare HoldCo). T.C. amended her petition on December 29, 2015, adding Texas Emergency Room Services, P.A. (TERS) as a defendant. The amended petition alleged causes of actions against Kayass for sexual assault, intentional infliction of emotional distress, and conspiracy to cover up sexual assault. T.C. brought causes of action against the remaining defendants for intentional infliction of emotional distress, negligence and gross negligence, premises liability, being criminally complicit, and breach of fiduciary duty.

On May 9, 2016, Kayass filed a motion to dismiss alleging that T.C.'s lawsuit should be dismissed because she was alleging health care liability claims and had never filed an expert report as required by the Act. Likewise, on May 10, 2016, Cook Children's filed a motion to dismiss and a motion for summary judgment, and on May 25, 2016, EmCare, EmCare HoldCo, and TERS filed a joint motion to dismiss seeking to dismiss T.C.'s lawsuit due to her failure to file an expert witness report under the Act. The trial court granted the defendants' motions on June 20, 2016 and dismissed the lawsuit.

T.C. originally appealed the trial court's decision as to the dismissal of her lawsuit against all defendants. However, on November 17, 2016, T.C. filed an agreed motion to dismiss her appeal against all defendants except Kayass, and notified this court that she had also nonsuited her claims against those defendants. This court granted the motion on December 1, 2016, and T.C. now challenges only the part of the trial court's order dismissing her lawsuit against Kayass.

Upon closer review of the record, we were concerned that the dismissal order as to Kayass appeared to be neither a final judgment nor an appealable interlocutory order because it did not appear to finally resolve Kayass's claim for attorney's fees. Therefore, on August 12, 2017, we issued an order requesting that any party wishing to continue the appeal either file a response presenting the grounds for continuing or furnish this court with a signed copy of the trial court's order or judgment finally resolving Kayass's claim for attorney's fees or risk this appeal being dismissed for want of jurisdiction. On October 3, 2017, T.C. filed her jurisdictional brief, providing this court with the trial court's order granting Kayass's nonsuit of his claims for attorney's fees against T.C. and leaving no ambiguity that this appeal is properly before the court.

## II. ANALYSIS

The sole issue in this appeal concerns whether T.C. was required to file an expert witness report under section 74.351(a) of the Act with regard to her claims against Kayass. We conclude that T.C.'s claims are not health care liability claims and are not subject to the Act's expert witness report mandate.

### A. The Standard of Review for Determining Health Care Liability Claims.

There is no dispute that the issue presented in this appeal implicates the scope of claims covered by the Act. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). We generally review a trial court's order granting a motion to dismiss pursuant to section 74.351(b) of the Act under an abuse-of-discretion standard. *See Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). However, the question of whether the Texas Legislature intended claims such as T.C.'s to be health care liability claims, falling with the Act's mandatory expert

report requirement, is a question of law to which we apply a de novo standard of review. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012); *Tex. W. Oaks Hosp.*, 371 S.W.3d at 177.

We are mindful that in construing the Act, this court must " 'determine and give effect to the Legislature's intent.' " *Tex. W. Oaks Hosp.*, 371 S.W.3d at 177 (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003)). In making this determination, we must begin by looking at the "plain and common meaning of the statute's words." *Id.*; *cf. Ogden v. Sanders*, 25 U.S. (12 Wheat.) 213, 332, 6 L.Ed. 606 (1827) (Marshall, C.J., dissenting) (stating "that the intention of the [statute] must prevail; that this intention must be collected from its words; that its words are to be understood in that sense in which they are generally used by those for whom the instrument was intended; that its provisions are neither restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers").

## B. How Does the Act Define a Health Care Liability Claim?

Section 74.351(a) of the Act requires that a claimant must serve on each party or the party's attorney, within 120 days, one or more export reports for each physician or health care provider against whom a claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If an expert report is not served within 120 days, the trial court is required upon motion by the affected physician or health care provider to dismiss the claim and award reasonable

attorney's fees and costs. *Id.* at § 74.351(b).

The expert report requirement applies only to health care liability claims, which are defined as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (West 2017).

█ Interpreting this definition, the supreme court has held that a health care liability claim has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the claimant's injury. *Loaisiga*, 379 S.W.3d at 255 (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010)); *see Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 725–26 (Tex. 2013) (citation omitted). As to the first element, there is no dispute that Kayass is a physician. Further, there is no dispute as to the third element—that the acts allegedly committed by Kayass were the cause of T.C.'s injuries.[1]

---

1. It is worth noting that while T.C. was not receiving medical treatment as a patient of Kayass, the parties do not contest that she may still qualify as a "claimant" under the Act. It is well-settled that a claimant need not be a patient receiving treatment from the health care provider to allege a claim qualify-

ing as a health care liability claim. *See Tex. W. Oaks*, 371 S.W.3d at 192–93 (holding that a hospital's employee could file a health care liability claim against the hospital for failing to properly train the employee when he was injured during an altercation with a patient); *see also* Tex. Civ. Prac. & Rem. Code Ann.

Thus, our analysis focuses on the second element, that is, whether T.C.'s claims are "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *Loaisiga*, 379 S.W.3d at 255; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). In his brief, Kayass argues that "the conduct about which [T.C.] complains [of] occurred during the course of treatment Dr. Kayass was providing to [T.C.'s] children [and] . . . is inseparable from the rendition of health care services." In her brief, T.C. contends that "Kayass assaulted T.C. Such conduct had nothing to do with the medical care provided to T.C.'s children."

## C. How is the Court to Determine Whether T.C.'s Claims Involve Health Care?

 Analysis of a claim under the second element to determine if it involves health or medical care focuses on "the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Loaisiga*, 379 S.W.3d at 255 (citing *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847, 854 (Tex. 2005)). In addition, a claim based on one set of facts cannot be divided into both a health care liability claim and another type of claim. *Marks*, 319 S.W.3d at 665–66; *see also Diversicare*, 185 S.W.3d at 851. We must determine the gravamen of the claim by examining the entire record. *Loaisiga*, 379 S.W.3d at 258–59; *accord Marks*, 319 S.W.3d at 664 (focusing on the "gravamen of the claim, not the form of the pleadings"); *Diversicare*, 185

S.W.3d at 847, 851 (examining the "underlying nature" or "essence" of the claim).

In *Loaisiga*, the supreme court held that the Act essentially creates a rebuttable presumption that a claim is a health care liability claim if it is, as here, against a physician and is based on facts implicating the physician's conduct during the course of a patient's care, treatment, or confinement. *See* 379 S.W.3d at 256 (citing *Marks*, 319 S.W.3d at 662). T.C.'s allegations of sexual assault implicate Kayass's actions during the medical exam of her minor children. Thus, T.C.'s claims against Kayass are presumed to be health care liability claims. *See, e.g., Bueno v. Hernandez*, 454 S.W.3d 178, 184 (Tex. App.—San Antonio 2014, pet. denied) (op. on reh'g) (citing *Loaisiga*, 379 S.W.3d at 256); *see also Hopebridge Hosp. Houston, L.L.C. v. Lerma*, 521 S.W.3d 830, 835 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

T.C. can rebut the *Loaisiga* presumption if the record shows

(1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Loaisiga*, 379 S.W.3d at 257.

## D. T.C.'s Claims Against Kayass are not Health Care Liability Claims.

██ The record before us is limited, consisting only of the parties' pleadings

§ 74.001(a)(2) (defining "claimant" as "a person . . . seeking or who has sought recovery of damages in a health care liability claim"). In cases like this one, it is not the status of the person bringing the claim but rather the nature of the underlying claim that determines whether the claim is a health care liability claim. *See Tex. W. Oaks*, 371 S.W.3d at 178.

and filings and exhibits related to the motions to dismiss filed by the defendants. Examining T.C.'s amended petition and the claims related to Kayass, T.C. alleged that she was injured when Kayass intentionally assaulted her without her consent by groping her breast and thigh, kissing and licking her, and forcing her to touch his penis. T.C. further alleged that she suffered injury when Kayass obtained her telephone number from a medical chart and sent her a "harassing message" via text after she left the urgent care clinic.

According to Kayass, because this alleged conduct occurred during the course of treatment of T.C.'s children, it is inseparable from the rendition of health care services. We disagree. The amended petition's alleged facts related to Kayass's actions, undertaken without T.C.'s consent, are consistent throughout the record and demonstrate that the complained-of actions did not arise from his rendition of health care services. For example, in her response to Kayass's motion to dismiss, T.C. argued that she "was not a patient of Dr. Kayass," and she asserted that "Dr. Kayass groped her and licked her face at the hospital and then sent her inappropriate text messages after she left the hospital." Further, in the police report of the alleged incident contained in the record, T.C. made almost identical allegations regarding Kayass's actions.

In addition, although Kayass contends that T.C.'s allegation about his accessing her children's medical chart to obtain her phone number is enough to turn her claims into health care liability claims because maintaining the confidentiality of patient records is part of providing health care, we also disagree. While T.C. did allege that Kayass exploited her children's chart to find her phone number without her consent, considering the allegation in context, her complaint, which is consistent through-out the record, is that she was injured because Kayass texted her an inappropriate message. In other words, the gravamen of her complaint against Kayass and the damages she is seeking to obtain are related to his offensive, intentional conduct, not his alleged violation of the confidentiality of the information of the chart. *See Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 504 (Tex. App.—Austin 2011, pet. denied) (stating that "if the essence of the plaintiff's suit—and the injury for which he seeks damages—is the intentional assault," then "the reviewing court would be wrong to ignore the intentional conduct and instead focus on the potentially infinite secondary consequences that might have also resulted in the context of the medical or health-care procedure").

We conclude that in this instance, "the only possible relationship between the conduct underlying [T.C.'s] claim and the rendition of medical services or healthcare [is] the healthcare setting (i.e., the physical location of the conduct in a health care facility), [Kayass's] status as a doctor or health care provider, or both." *See Loaisiga*, 379 S.W.3d at 256 (internal citations omitted); *see also Drewery*, 344 S.W.3d at 504 ("Texas courts have consistently recognized that not every cause of action for injuries arising in a health care setting is a health care liability claim."); *accord Parker v. CCS/Meadow Pines, Inc.*, 166 S.W.3d 509, 513 (Tex. App.—Texarkana 2005, no pet.) ("Even in a medical setting, claims of torts which are not inseparably part of healthcare services or of safety or professional or administrative services directly related to health care are not healthcare liability claims." (citations and internal quotation marks omitted)). The record before us conclusively shows that T.C. rebutted the *Loaisiga* presumption that her claims are health care liability claims. Indeed, under no reasonable view of T.C.'s

allegations could it be argued that T.C.'s seeking medical treatment for her minor children would require Kayass to grope her and force her to touch his penis.[2] T.C.'s children were Kayass's patients, T.C. did not consent to an examination of herself, the alleged assault of T.C. was not done in the scope of examining her, and the record negated any relationship between Kayass's alleged acts and his rendition of medical services to T.C.'s children.

### E. Our Holding is Supported by Decisions of Other Appellate Courts.

Our holding is buttressed by decisions from our sister courts of appeal. *See, e.g.,* *Nexus Recovery Ctr., Inc. v. Mathis*, 336 S.W.3d 360, 365–66, 368–69 (Tex. App.—Dallas 2011, no pet.) (sexual exploitation and therapeutic deception claims against mental health services facility by former patient were not health care liability claims, even though relationship between claimant and counselor arose as a result of claimant receiving counseling services at facility); *Drewery*, 344 S.W.3d at 504 (allegations that nurses intentionally assaulted patient pre-surgery by painting his nails, writing on his body, and wrapping his thumb with tape were not health care liability claims); *Jones v. Khorsandi*, 148 S.W.3d 201, 206 (Tex. App.—Eastland 2004, pet. denied) (patient's claims for assault, battery, and intentional infliction of emotional distress based on doctor's "unwanted and offensive sexual advances" were not health care liability claims because they did not involve breach of applicable standards of care and were not

inseparable part of rendition of medical services); *Buck v. Blum*, 130 S.W.3d 285, 289–90 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (concluding neurologist's placement of his penis into patient's hand during neurological examination was not a health care liability claim); *see also Parker*, 166 S.W.3d at 513 (holding that if hospital employees abused claimant in ways that are unrelated to the course of medical treatment, such as by assaulting him outside of efforts to treat or restrain him, claims based on such abuse would not be health care liability claims under the Act).

Particularly instructive is *Holguin v. Laredo Regional Medical Center, L.P.*, 256 S.W.3d 349 (Tex. App.—San Antonio 2008, no pet.). There, a patient was given medication that caused him to become drowsy and fall asleep, and when he awoke, he found a nurse sexually assaulting him. *Id.* at 351. The court found that the claim against the nurse was not a health care liability claim since the nurse injured the claimant by his own actions and that the claim had nothing to do with a health care provider's lapse in professional judgment or failure to protect a patient due to an absence of supervision or monitoring. *Id.* at 354. The court further concluded, in language perfectly applicable here, that it "would defy logic to suggest that a sexual assault is an inseparable part of the rendition of medical care or a departure from accepted standards of health care." *See id.* at 353 (internal citations and quotations omitted).

2. If we were to accept Kayass's argument at face value—that the alleged sexual assault of T.C. should be considered a health care liability claim merely because it took place in an exam room and occurred while a mother was seeking medical care for her children—then the logical conclusion would be that any crime (murder, robbery, etc.) committed by a health care provider in a health care facility

would be a health care liability claim. Surely, it would be absurd to find that the Act's intention, as gleaned from its plain language, is that claimants are required to file expert witness reports to opine that health care providers should not commit criminal acts toward nonpatients who happen to be present in an exam room.

Also instructive is *Christus Spohn Health System Corp. v. Sanchez*, 299 S.W.3d 868 (Tex. App.—Corpus Christi 2009, pet. denied). In that case, a patient alleged that while she was recovering in the ICU, a nurse and a certified nurse's assistant entered her room and, among other things, made unwanted sexual advances toward her, undressed her, and made unwanted physical contact with her. *Id.* at 872. The court held that the patient's claims against the nurse and the assistant were not health care liability claims for which an expert witness report was required and stated that it "would be remiss to conclude that such conduct ... somehow involved the professional judgment" of the nurse and his assistant. *Id.* at 874. Finally, the court noted that when "a claim is based on the injurious actions of an individual unrelated to the provision of health care, that individual cannot hide behind the procedural safeguards of chapter 74 merely because he or she was also a health care provider at the time of the assault or other harmful conduct." *Id.*

The claims of T.C. against Kayass are even farther removed from being health care liability claims than those presented in *Holguin* and *Sanchez.*[3] Unlike the claimants in those cases, T.C. was not even seeking or receiving health care or medical treatment from Kayass. T.C. was at the urgent care clinic only for her children to receive treatment. The alleged actions of Kayass toward T.C., a nonpatient, do not involve medical treatment and were not the result of a lapse in his professional judgment as a physician. The allegations and the record reflect that T.C.'s claims against Kayass are that without her consent, Kayass kissed, licked, and groped her and forced her hand onto his genitalia and that she suffered injury and damages as a result. These actions are of the assault nature and do not stem from the provision of medical care or the treatment of T.C.'s children. Moreover, the provision of specialized knowledge by a medical expert in this case would not be necessary to prove T.C.'s claims against Kayass and would amount to a needless exercise. *See Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 713 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Medical expert testimony would not be required to establish that [defendants] were willing participants in a conspiracy to commit fraud, or that they were engaging in a particular course of business as a means of extorting larger fees from insurers.").

**3.** Importantly, although *Holguin* and *Sanchez* held that the patients' claims against the healthcare providers in their individual capacities related to the sexual assaults were not health care liability claims, these courts <u>did</u> hold the patients' negligence claims against the hospitals employing the health care providers were health care liability claims subject to the expert report requirements of section 74.351 of the Act. *See Sanchez*, 299 S.W.3d at 874–876; *Holguin*, 256 S.W.3d at 354–57; *see also Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 135–41 (Tex. App.—Eastland 2006, no pet.) (holding that claims against treatment center arising from nurses' and counselors' alleged physical assault of patient were health care liability claims).

Here, of course, because T.C. dismissed her appeals related to Cook Children's, EmCare, EmCare HoldCo, and TERS and those claims were nonsuited by the trial court, we offer no opinion as to whether T.C.'s claims against those entities would be subject to the expert report requirements under the Act. This opinion only address whether T.C's claims against Kayass, individually, fall under the Act. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us.").

## III. CONCLUSION

Having sustained T.C.'s sole issue, we reverse the trial court's judgment and remand this case for further proceedings.

GABRIEL, J. filed a dissenting opinion.

LEE GABRIEL, JUSTICE, dissenting.

In this appeal, we are faced with a sympathetic claimant who was sexually assaulted by a medical professional during her minor children's medical exams. When presented with these types of facts, it is difficult to ignore the practical effect of a particular decision. Even so, I must respectfully disagree with the majority's conclusion that appellant T.C.'s claims against appellee Ahmad Abo Kayass are not healthcare-liability claims (HCLCs) governed by the expert-report requirement and with the majority's judgment reversing the trial court's contrary holding.

In the trial court and as explained by the majority, T.C. raised claims against not only Kayass but also against the medical facility and that facility's management companies (the entities). T.C. alleged that the entities departed from the applicable standards of care by credentialing Kayass, by negligently supervising him, and "by facilitating . . . Kayass's sexual preda[city]." She further alleged that the entities were vicariously liable for Kayass's actions and participated in a conspiracy with Kayass to "conceal . . . and keep secret" Kayass's actions. Finally, T.C. alleged that Kayass not only sexually assaulted her during her children's medical exam but "exploited her chart information to retrieve her telephone number" in order to send her a harassing text message.[1]

After 120 days had passed, Kayass and the entities separately moved to dismiss T.C.'s suit because she had failed to file an expert report supporting her claims, which they all argued were HCLCs subject to the expert-report requirement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)–(b) (West 2017). The trial court granted each motion to dismiss, dismissing T.C.'s claims with prejudice. Although T.C. filed a notice of appeal from each of the dismissal orders, she voluntarily dismissed her appeal as to the trial court's dismissal of her claims against the entities. T.C. filed her motion to dismiss the entities from her appeal contemporaneously with her appellate brief and stated that she sought to voluntarily dismiss her appeal as to the entities because she had nonsuited those claims in the trial court. *See* Tex. R. Civ. P. 162. But T.C. filed her notice of nonsuit almost five months after the trial court had dismissed all of her claims with prejudice based on her failure to file an expert report supporting her HCLCs. T.C.'s subsequent notice of nonsuit did not vitiate the trial court's earlier dismissal, which had adjudicated the merits of each of her claims. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) ("Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit."); *Mossler v. Shield*, 818 S.W.2d 752, 754 (Tex. 1991) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."); *Curry v. Bank of Am., N.A.*, 232 S.W.3d 345, 354 (Tex. App.—Dallas 2007, pet. denied) ("[A] party who has had his claims adjudicated unsuccessfully cannot later non-suit his claims to avoid the judgment."). In any event, we granted T.C.'s motion to dismiss and dismissed the entities from T.C.'s appeal. *See* Tex. R. App. P. 42.1(a)(1).

T.C. now argues that her claims against only Kayass were not HCLCs subject to the expert-report requirement. But we

---

1. The record shows that the text read: "You[r]　　　lips are sweet [T.C.]."

cannot so parse T.C.'s claims. We must, as the majority recognizes, look at the entire record and the overall context of T.C.'s suit, not merely her claims against Kayass in isolation, to determine de novo whether T.C. has rebutted the presumption that her claims were HCLCs. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–59 (Tex. 2012).

Here, the trial court concluded that T.C.'s claims against the entities were HCLCs, a conclusion that T.C. does not challenge on appeal. Whether or not those claims were HCLCs as the trial court concluded,[2] they were based on the same facts as the claims T.C. brought against Kayass. Accordingly, the claims against the entities have been established to be HCLCs for the purposes of this case; therefore, T.C.'s claims against Kayass are subject to the same characterization. *See PM Mgmt.–Trinity NC, LLC v. Kumets*, 404 S.W.3d 550, 552 (Tex. 2013); *Turtle Healthcare Grp., L.L.C. v. Linan*, 337 S.W.3d 865, 868–69 (Tex. 2011) (op. on reh'g); *Yamada v. Friend*, 335 S.W.3d 192, 195–98 (Tex. 2010). T.C. cannot avoid the effect of the expert-report requirement "by claim-splitting or by any form of artful pleading." *Kumets*, 404 S.W.3d at 552; *see also Yamada*, 335 S.W.3d at 197–98. All of T.C.'s claims were founded on the same operative facts; therefore, the classification of her claims against the entities as HCLCs—a classification that T.C. does not challenge—must govern the classification of her claims against Kayass. *See Kumets*, 404 S.W.3d at 552 (agreeing that "claims that are based on the same facts as HCLCs are themselves HCLCs and must

be dismissed absent a sufficient expert report"); *Yamada*, 335 S.W.3d at 195–96 (holding that because plaintiffs did not challenge conclusion that some of their claims against doctor were HCLCs, all claims were HCLCs because they were based on the same facts); *Med. Ctr. of Lewisville v. Slayton*, 335 S.W.3d 382, 386 (Tex. App.—Fort Worth 2011, no pet.) ("[B]ecause Slayton conceded ... that her original petition asserted [an HCLC], because she failed to file any expert report, and because her first amended petition asserting a common law premises liability ... claim against the Medical Center is based on the same facts as the [HCLC] asserted in her original petition, the record before us reflects the type of claim splitting expressly prohibited by *Yamada*. ...").

Additionally, one of T.C.'s claims—that Kayass and the entities violated medical-privacy laws when Kayass was allowed to "exploit[ ] her chart information" in order to send T.C. harassing text messages—was an act directly related to medical or healthcare services; thus, T.C. did not conclusively rebut the presumption that this claim is an HCLC. *See Loaisiga*, 379 S.W.3d at 257; *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 181 (Tex. 2012); *see also Monson v. Allen Family First Clinic, P.A.*, 390 S.W.3d 598, 601–02 (Tex. App.—Dallas 2012, no pet.) ("A claim for wrongful disclosure of health care information is [an HCLC] subject to the expert-report requirement."). Because this claim is presumed to be an HCLC, her other claims against Kayass based on the same

---

2. T.C.'s claims against the entities were based on departures from accepted standards of professional or administrative services directly related to healthcare, which satisfies the statutory definition of an HCLC. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West 2017); *see also Loaisiga*, 379 S.W.3d at 255 ("[C]laims premised on facts that *could*

support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.").

nucleus of operative facts may not be exempted from the expansive application of the expert-report requirement. *See Kumets*, 404 S.W.3d at 552 ("When a plaintiff asserts a claim that is based on the same underlying facts as an HCLC that the plaintiff also asserts, both claims are HCLCs and must be dismissed if the plaintiff fails to produce a sufficient expert report."); *E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, 511 S.W.3d 172, 176 (Tex. App.—El Paso 2014, pet. denied) ("Where all claims arise from the same nucleus of operative fact, and some pleaded claims are HCLCs, then the [expert-report requirement] must be followed or else all claims arising from the same fact scenario must be dismissed."). In short, HCLCs "operate like the Three Musketeers—all for one and one for all." *Alajmi v. Methodist Hosp.*, 639 Fed.Appx. 1028, 1030 (5th Cir. 2016).

As I stated at the outset, Kayass's sexual assault of T.C. while he was giving her small children a medical exam paints this result with an apparent patina of unjustness. But I believe that the applicable statutes and binding precedent require that T.C.'s claims against Kayass be classified as HCLCs, forcing the inevitable conclusion that her claims must be dismissed based on her failure to file an expert report. As such, I would affirm the trial court's dismissal order regarding T.C.'s claims against Kayass. Because the majority does not, I respectfully dissent.