

# NUMBER 13-20-00405-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAFATH QURAISHI, M.D.,                                          Appellant,

v.

SAN JUANITA OCHOA,                                             Appellee.

**On appeal from the 206th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina
Memorandum Opinion by Justice Hinojosa**

Appellant Rafath Quraishi, M.D. appeals the trial court's denial of his motion to dismiss on the basis that appellee San Juanita Ochoa failed to file an expert report under Texas Civil Practice and Remedies Code chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. By one issue, Quraishi contends that a claim based on a physical

altercation arising from a physician's efforts to prevent a former employee from allegedly absconding with patient medical records is a health care liability claim requiring an expert report. We affirm.

## I. BACKGROUND

According to Ochoa's original petition, she was employed by Quraishi at the Miramar Interventional Pain Center for five years. Ochoa claims that throughout her employment, Quraishi verbally and physically abused her. On June 20, 2018, Ochoa claims Quraishi terminated her employment "in a fit of rage" and "screamed at her to leave his clinic," stating he never wanted to see her again. Ochoa's pleading then alleges that when she went to collect her personal property, Quraishi "physically grabbed her by the shoulder, pushed her into a corner, and began viciously shaking her. [Quraishi] then instructed another employee to lock the door to prevent [Ochoa] from leaving." Although Ochoa requested to leave and made it clear that she did not want to stay, Quraishi allegedly "blocked her progress and prevented her from leaving." Ochoa claims she left when her son came into the clinic to free her.

On October 30, 2019, Ochoa filed a lawsuit against Quraishi, alleging causes of action in tort for false imprisonment and assault. Quraishi filed his answer on February 4, 2020, generally denying Ochoa's claims. On March 20, 2020, Quraishi filed a motion to stay the proceeding alleging that Ochoa's claims were health care liability claims requiring an expert report pursuant to Texas Civil Practice and Remedies Code § 74.351. *See id*.

Quraishi argued the case was a health care liability lawsuit because he is a health care provider. According to his motion, he terminated Ochoa on June 14, 2018, and not

on June 20, 2018, as she alleged in her original petition. Quraishi contended that Ochoa stole patient files when she retrieved her belongings the day she was fired on June 14. When Ochoa returned to the office on June 20, 2018, employees allegedly noticed that she was taking medical records again. Quraishi confronted Ochoa about her alleged theft when, according to him, Ochoa threatened him with a hammer. Quraishi then allegedly told employees to lock Ochoa into an office until the police arrived to settle the matter. According to him, after the police inspected what Ochoa had in her possession, they returned three patient files which included "medical history, demographics, credit card information[,] and other personal information." This allegation, however, is not reflected in the police report.

Ochoa, in her response, denied Quraishi's allegation that she was taking patient files. She disagreed that her lawsuit required an expert report and characterized the motion to stay as a "baseless attempt to delay proceedings." In a reply brief, Quraishi attached portions of a non-certified police record, as well as three affidavits—one from Quraishi and two from his current employees. The affidavits, in short, set forth that the clinic suspected that Ochoa had stolen patient records on the day she was terminated— June 14, 2018—and that she did so again on June 20, 2018 before the files in her possession were allegedly returned by police.

On June 5, 2020, Quraishi filed a motion to dismiss Ochoa's lawsuit for Ochoa's failure to provide an expert report pursuant to Chapter 74. *See id*. Ochoa again denied Quraishi's allegations and objected to the non-certified police record that was attached as evidence to the motion to dismiss. The trial court conducted a hearing on June 1, 2020

3

on the motion to stay and on July 16, 2020 on the motion to dismiss. The trial court denied both motions on August 25, 2020. Quraishi now appeals the denial of his motion to dismiss.

## II.  STANDARD OF REVIEW & APPLICABLE LAW

### A.  Standard of Review

An appellate court reviews a trial judge's decision on a motion to dismiss a claim under § 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex. App.—Dallas 2007, no pet.). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id*. at 445. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

Whether a claim is a health care liability claim under Chapter 74 is question of law that is reviewed de novo. *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019); *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016). When determining whether a lawsuit is a health care liability claim, courts should "consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012). Courts must consider the underlying nature of the plaintiff's claim rather than its label, such that "a party cannot avoid Chapter 74's requirements and limitations through

4

artful pleading." *Weems*, 575 S.W.3d at 363.

If a claim is a health care liability claim, a claimant shall serve on the defendant health care provider an expert report not later than the 120th day after the date the defendant's answer is filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the expert report has not been served within the period specified, the trial court must dismiss the claim with respect to the health care provider with prejudice to the refiling of the claim. *See id*. § 74.351(b).

## B.    Applicable Law

The Texas Medical Liability Act (the "Act") aims to strike a "careful balance between eradicating frivolous claims and preserving meritorious ones." *Weems*, 575 S.W.3d at 362–63 (citing *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008)). The expert report serves as a threshold requirement to eliminate frivolous lawsuits "before litigation gets underway." *Id*.; *see Spectrum Healthcare Res., Inc. v. McDaniel*, 306 S.W.3d 249, 253 (Tex. 2010).

A health care liability claim contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Texas West Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). To determine if a case is a health care liability claim, the focus is not the status of the claimant but rather

5

the gravamen of the claim or claims against the health care provider. *See Williams*, 371 S.W.3d at 179–80. "When a claim brought against a health care provider is 'based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement,' a rebuttable presumption arises that it is a health care liability claim for purposes of the Medical Liability Act." *Weems*, 575 S.W.3d at 363 (quoting *Loaisiga*, 379 S.W.3d at 256).

To rebut the claim of a health care liability claim, the plaintiff must show: (1) that her allegation did not contain a complaint about an act related to medical or health care services other than the alleged offensive contact; (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff; and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place. *Loaisiga*, 379 S.W.3d at 257.

### III. ANALYSIS

Quraishi meets the first and third elements of a health care liability claim: he is the defendant physician in this case and Ochoa has alleged that his actions caused her injury. *Williams*, 371 S.W.3d 179–80; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The focus of our analysis, therefore, is on the second element: whether the claim at issue concerns "treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *See Williams*, 371 S.W.3d 179–80; TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

Here, the initial police report regarding the June 20, 2018, incident between Ochoa

6

and Quraishi mentioned the issue of patient records. [1] Quraishi, in the affidavit he submitted as evidence for his motion for stay, testified that the patient records police retrieved from Ochoa on June 20, 2018 contained his patients' "medical history, demographics, credit card information and other personal information." Quraishi's employee Melinda Segovia testified by affidavit that Ochoa took "patient files and office property" the day she was terminated and attempted to do the same on June 20, 2018. Another employee, Linda Cantu, testified that "[Ochoa] had patient files in her hand and [Quraishi] was trying to prevent her from leaving with those patient files" and that "after the police inspected what [Ochoa] had in her hands, they returned the items to [Quraishi]. . . . When we looked at the files, we saw that she had taken patient files with medical records along with some communication logs that all belonged to the office." In light of the foregoing, we conclude Quraishi created a presumption that this lawsuit may be a healthcare liability claim. *See Weems*, 575 S.W.3d at 363 (quoting *Loaisiga*, 379 S.W.3d at 256).

We now analyze whether Ochoa conclusively rebutted the presumption that this is a health care liability claim. *See Loaisiga*, 379 S.W.3d at 257. In *Loaisiga*, the Texas Supreme Court set forth a clear test to defeat a rebuttable presumption:

> We conclude that a claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

---

[1] Although Ochoa objected that the police report Quraishi submitted as an exhibit to his motion to stay was not certified, Ochoa did not get a ruling on this objection.

7

*Id*. Reviewing the record, we conclude Ochoa decisively rebuts the health care liability presumption. *Id*. at 257–58. First, Ochoa's pleadings allege false imprisonment and assault by a former employer—there is no complaint whatsoever about Quraishi's "medical or health care services" other than the alleged offensive conduct. *Id*. at 257; *see T.C. v. Kayass*, 535 S.W.3d 169, 174 (Tex. App.—Fort Worth 2017, no pet.) (holding that the gravamen of plaintiff's sexual assault complaint against the defendant physician was "related to his offensive, intentional conduct, not his alleged violation of the confidentiality of the information of the chart" when defendant used his pediatric patient's medical chart to get the plaintiff mother's phone number). Second, Ochoa did not "actually" or "impliedly" consent to being physically grabbed by the shoulder, pushed into a corner, and shaken, or to being locked in an office. *See Loaisiga*, 379 S.W.3d at 257. Third, the only relationship to the "rendition of medical services or healthcare" is the fact that these alleged actions occurred at Quraishi's clinic, the Miramar Interventional Pain Center. *Id*.; *see Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 504 (Tex. App.—Austin 2011, pet. denied) (stating that "if the essence of the plaintiff's suit—and the injury for which he seeks damages—is the intentional assault," then "the reviewing court would be wrong to ignore the intentional conduct and instead focus on the potentially infinite secondary consequences that might have also resulted in the context of the medical or health-care procedure"); *see also Brown v. Nocar*, No. 13-19-00503-CV, 2021 WL 1418222, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 15, 2021, pet. filed) (mem. op.) (holding that multiple claims for sexual assault were not health care liability claims when some of the acts occurred in the defendant's medical office). Ochoa thus meets all of the

8

elements to thoroughly rebut the health care liability presumption. *See Loaisiga*, 379 S.W.3d at 257. We hold this is is not a health care liability claim. This is an employment dispute with allegations of a physical altercation and a possible theft.

Because this was not a healthcare liability suit, Ochoa was not required to file an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Thus, the trial court did not err in denying Quraishi's motion to dismiss. *See id*. We overrule Quraishi's sole issue.

## IV.    Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
31st day of August, 2021.

9