

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00031-CV

_____

CHRISTUS GOOD SHEPHERD MEDICAL CENTER, Appellant

V.

MICHAEL SONNIER, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 20-0378

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

Michael Sonnier sued Christus Good Shepherd Medical Center (Christus)[1] and alleged that he suffered damages and emotional distress from the conduct of certain members of Christus's staff while he was under Christus's care. After Sonnier failed to file an expert report as required by the Texas Medical Liability Act (Act),[2] Christus moved to dismiss his claims.[3] The trial court denied the motion, and Christus filed this interlocutory appeal.[4] We find that this claim was a health care liability claim (HCLC) subject to the Act's expert report requirement, reverse the trial court's judgment, dismiss Sonnier's claims against Christus, and remand this case to the trial court for further proceedings.

## I.     Background

Sonnier filed his original petition in April 2020 and named only Christus as a defendant. According to the original petition, Sonnier had been working as a charge nurse in Christus's surgery department for over ten years when he was admitted to Christus to have a hernia repaired in January 2020. Sonnier alleged that, as a patient under Christus's care, he had the expectation that Christus would adhere to a reasonable standard of care. Although there were no

---

[1]In his second amended petition, Sonnier also named Robin Travis, Kimberly Alcox, and Morgan Davis as defendants. Travis, Alcox, and Davis are not parties to this appeal.

[2]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (requiring service of an adequate expert report within 120 days after the original answer is filed, absent a statutorily permitted extension).

[3]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2) (requiring, upon motion by a health care provider, dismissal of the claims against the health care provider if the claimant does not timely file an expert report).

[4]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Supp.).

complications with the hernia surgery, when Sonnier awoke from the procedure, he discovered that, while he was under anesthesia, certain members of Christus's staff had:

--placed a diaper on him "despite the fact that it [was] outside of the standard of care for most hernia patients to be placed in a diaper post-surgery";

--taped a plastic baggie containing mixed nuts to the diaper and written, "These nuts!" on the baggie;

--signed the diaper, both inside and out, with messages such as, "Robin was here! Get well soon!" in the area of his genitals, and "poop shoot" on the buttocks;

--affixed a colostomy bag to him, even though his procedure and recovery did not require him to wear a colostomy bag; and

--again deviated from the standard of care by painting his toenails bright red.

Sonnier also alleged that, while recovering at home, he received text messages from one of the staff members that had cared for him, Alcox, who inquired how he was doing. When Sonnier replied that he was sore but doing well, Alcox texted, "Great. I guess you are not in pain are [sic] constipated!!!!!" Sonnier replied, "Not too bad," to which Alcox texted, "That's good. By the way, I did not paint your toenails . . . Anna did. I would have painted them better than that, but I did put the diaper on you, lol. Take care. I will check on you later." Davis, another staff member who had cared for Sonnier, also exchanged text messages with him. Davis asked how he was doing and texted, "How's the toe polish," followed by a crying emoji.

Sonnier alleged that Christus "was at all times in a position that required it to provide medical care and treatment and [Sonnier] was at all times physically incapable of defending himself against the actions committed by" Christus. Sonnier asserted claims against Christus for intentional infliction of emotional distress for placing him in a diaper, painting his toenails, and

3

affixing the colostomy bag, which he alleged "went beyond any duties or responsibilities as a Medical Center." He also asserted claims against Christus for assault, battery, and gross negligence based on this same conduct. Along with these direct claims, Sonnier asserted that Christus was vicariously liable for the actions of its employees through the doctrines of *respondeat superior* and ratification.

Christus filed its original answer on May 22, 2020, and entered a general denial. After Sonnier failed to serve an expert report required by the Act, Christus moved to dismiss his claims and for attorney fees and costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2).

Sonnier then filed his first amended petition and joined Alcox, Davis, and Travis as defendants. The factual allegations in the first amended petition were the same as in the original petition, except that Sonnier removed all (1) references to any standard of care, (2) references to any deviation from any standard of care, and (3) references that the conduct went beyond Christus's duties and responsibilities as a medical center. Sonnier asserted claims against Alcox, Davis, and Travis for intentional infliction of emotional distress, assault, and battery and asserted that Christus was vicariously liable for the actions of its employees through the doctrines of *respondeat superior* and ratification. Sonnier also opposed the motion to dismiss, alleged that his first amended petition had addressed any pleading deficiencies, and argued that the motion should be denied because his claims against Christus were not HCLCs.

Christus filed special exceptions to the first amended petition objecting that Sonnier had pleaded no facts supporting his theories of *respondeat superior* and ratification. As a result,

4

Sonnier filed a second amended petition and added certain allegations to address the special exceptions. After a hearing, the trial court denied Christus's motion to dismiss.

On appeal, Christus argues that the claims Sonnier asserted against Christus were HCLCs and that the Act required Sonnier to serve Christus with an expert report no later than the 120th day after it filed its original answer. Since Sonnier failed to comply with this requirement, Christus contends that the trial court was required to dismiss Sonnier's claims against it and to award it reasonable attorney fees and costs. We agree.

## II.     Standard of Review

The determination of whether claims come "within the purview of the Act is a question of law" that we review de novo. *Watson v. Good Shepherd Med. Ctr.*, 456 S.W.3d 585, 587 (Tex. App.—Texarkana 2015, pet. denied) (citing *Tex. W. Oaks Hosp., LP & Tex. Hosp. Holdings, LLC v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012)). We also apply a de novo standard of review "when the resolution of an issue on appeal requires interpretation of a statute." *Stanford v. Cannon*, No. 06-11-00011-CV, 2011 WL 2518856, at *2 (Tex. App.—Texarkana June 23, 2011, pet. denied) (mem. op.) (citing *Vanderwerff v. Beathard*, 239 S.W.3d 406, 408 (Tex. App.—Dallas 2007, no pet.)).

## III.    The Texas Medical Liability Act

Under the Act, a claimant that files an HCLC against a physician or health care provider must serve the physician or health care provider (or its attorney) one or more expert reports, and the expert's curriculum vitae, no later than the 120th day after the date the physician's or health care provider's original answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the

5

claimant fails to serve a physician or health care provider with an expert report within that time, the trial court, on motion by the physician or health care provider, must dismiss the claim with respect to that physician or health care provider and award the physician or health care provider reasonable attorney fees and costs. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

The Act defines an HCLC as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Under this definition,

an HCLC has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death.

*Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality op.)). The Act defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). Although the Act does not define "safety," the Texas Supreme Court "has defined it as 'the condition of being "untouched by danger; not exposed to danger; secure from danger, harm or loss."'" *Rogers v. Bagley*, 623 S.W.3d 343, 350 (Tex. 2021) (quoting *Williams*, 371 S.W.3d at 184 (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005))).

6

Because of the Act's broad language, the Texas Supreme Court has held that the Legislature's intent was "for the statute to have expansive application," *Loaisiga*, 379 S.W.3d at 256, and that the Act "creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are HCLCs," *id.* at 252. When considering whether a claim is an HCLC, we "focus[] on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Id.* at 255 (citing *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010)). Further, "a claim based on one set of facts cannot be spliced or divided into both an HCLC and another type of claim." *Id.* (citing *Yamada*, 335 S.W.3d at 197; *Diversicare*, 185 S.W.3d at 854). As a result,

> claims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.

*Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)). This means that "we need not consider whether [Sonnier]'s claim[s] [are] for intentional infliction of emotional distress [and assault and battery], as stated in his pleadings," because "a party cannot avoid Chapter 74's requirements and limitations through artful pleading." *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019) (citing *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004); *Diversicare*, 185 S.W.3d at 854). Rather, "[o]ur inquiry focuses on whether the gravamen of [Sonnier]'s complaint is a 'claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly

7

related to health care.'" *Id.* at 364 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)).

## IV.    Analysis

### A.    Which Pleadings Should Be Considered?

Here, Sonnier's only pleading on file when the 120-day deadline expired, and when Christus moved to dismiss for failure to serve an expert report, was his original petition. In its brief on appeal, Christus cites mainly to, and relies on, the allegations in the original petition in support of its argument that Sonnier's claims against it are HCLCs. Sonnier asserts in his brief that we should not consider the allegations in his original petition since he filed amended petitions after Christus moved to dismiss, citing Rule 65 of the Texas Rules of Civil Procedure[5] and *FKM Partnership, Ltd. v. Board of Regents of University of Houston System*, 255 S.W.3d 619, 633 (Tex. 2008).

In *FKM Partnership*, the Texas Supreme Court noted that, because under Rule 65, "amended pleadings and their contents take the place of prior pleadings[,] . . . causes of action not contained in amended pleadings are effectively dismissed at the time the amended pleading[s are] filed." *FKM P'ship*, 255 S.W.3d at 633. That said, *FKM P'ship* did not involve an alleged health care liability claimant who sought to avoid the dismissal of his suit by amending his petition to remove allegations that indicated he was asserting an HCLC. But the Act provides that, "[i]n the event of a conflict between [the Act] and another law, including a rule of procedure or evidence or court rule, [the Act] controls to the extent of the conflict." TEX. CIV.

___

[5]Rule 65 provides that, when an amended pleading is filed, the prior pleading "shall no longer be regarded as a part of the pleading in the record of the cause," subject to certain exceptions. TEX. R. CIV. P. 65.

PRAC. & REM. CODE ANN. § 74.002(a). For that reason, we look to the Act, and the cases construing its provisions, to determine which petition should be considered.

Because Section 74.351 provides that, if an expert report is not timely served, the trial court has no discretion to deny a motion to dismiss, the Texas Supreme Court has construed the 120-day deadline strictly and described it as a "statute-of-limitations-type deadline." *Ogletree v. Matthews*, 262 S.W.3d 316, 319–20 (Tex. 2007); *see Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767 (Tex. 2011) (per curiam). For that reason, a plaintiff who fails to serve an expert report within the deadline may not amend his petition and add new HCLCs against a defendant and thereby gain an extension of time to serve the report. *Med. Hosp. of Buna Tex., Inc. v. Wheatley*, 287 S.W.3d 286, 292 (Tex. App.—Beaumont 2009, pet. denied); *Runcie v. Foley*, 274 S.W.3d 232, 235 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Nor may the plaintiff nonsuit his original suit asserting an HCLC after failing to serve an expert report within the 120-day deadline, then refile his suit and gain another 120 days to file the report. *Davis v. Baker*, No. 03-10-00324-CV, 2010 WL 5463864, at *2–3 (Tex. App.—Austin Dec. 22, 2010, no pet.) (mem. op.); *White v. Baylor All Saints Med. Ctr.*, No. 07-08-0023-CV, 2009 WL 1361612, at *1 (Tex. App.—Amarillo May 13, 2009, pet. denied) (mem. op.).

Likewise, a plaintiff who asserts both an HCLC and a claim under a different theory of recovery based on the same underlying facts may not avoid dismissal for failure to file an expert report by amending his petition after the 120-day deadline and removing the HCLC. In *Yamada*, the Texas Supreme Court considered whether failure to serve an expert's report within the 120-

day deadline required dismissal of both an HCLC and common-law negligence claims based on the same underlying facts. *Yamada*, 335 S.W.3d at 192. In that case, Sarah Friend collapsed at a city's water park, was given emergency aid, and was transported to a hospital where she died from a heart condition. Yamada had advised the city on safety procedures and the placement of defibrillators at the park. Friend's parents sued Yamada and alleged that he had breached his duty to exercise ordinary care and his duty to act as an emergency medicine physician in providing medical consultive advice and recommendations regarding safety procedures to the city. When the Friends did not file an expert report within the 120-day deadline, Yamada filed a motion to dismiss, which the trial court denied. *Id.* at 194.

On appeal, the court of appeals held that the Friends had asserted claims for both a breach of an emergency physician's standard of care and for ordinary negligence. *Id.* It then affirmed the trial court's denial of the motion to dismiss as to the claims for ordinary negligence but held that the Friends' failure to file an expert report required dismissal of their claims for medical negligence. *Id.* at 195.

The Texas Supreme Court disagreed. The court first noted that it had previously "rejected the view that [a plaintiff] could allege a claim for premises liability independent of her healthcare liability claim," since that "'would open the door to splicing health care liability claims into a multitude of other causes of action with standards of care, damages, and procedures contrary to the Legislature's explicit requirements,'. . . [and] 'such artful pleading and recasting of claims is not permitted.'" *Id.* at 196 (quoting *Diversicare*, 185 S.W.3d at 854). It then explained,

10

Clearly, particular actions or omissions underlying health care liability claims can be highlighted and alleged to be breaches of ordinary standards of care. But if the same underlying facts are allowed to give rise to both types of claims, then the [Act] and its procedures and limitations will effectively be negated. Plaintiffs will be able to entirely avoid application of the [Act] by carefully choosing the acts and omissions on which to base their claims and the language by which they assert the claims.

Our prior decisions are to the effect that if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements.

*Id.* at 197 (citation omitted). For that reason, the court reversed the court of appeals to the extent that it affirmed the trial court's denial of Yamada's motion to dismiss and remanded the case to the trial court with instructions to dismiss all of the Friends' claims. *Id.* at 198.

In *Yamada*, the Texas Supreme Court reversed the lower court's holding that would have allowed a plaintiff who failed to timely file an expert report to evade the requirements of Section 74.351 by dismissing the HCLC but allowing the putative non-HCLC cause of action based on the same facts to go forward. Relying on *Yamada*, our sister courts of appeals have held that a plaintiff who fails to serve an expert report within the 120-day deadline may not avoid dismissal of her claim against a health care provider by filing an amended petition deleting the HCLC claim and pleading putative non-HCLC causes of action based on the same facts. *Lindsey v. Adler*, No. 05-12-00010-CV, 2013 WL 1456633, at *3–4 (Tex. App.—Dallas Apr. 9, 2013, no pet.) (mem. op.); *Med. Ctr. of Lewisville v. Slayton*, 335 S.W.3d 382, 383 (Tex. App.—Fort Worth 2011, no pet.).

11

Here, like the plaintiffs in *Lindsey* and *Slayton*, Sonnier has tried to evade the requirements of Section 74.351 by amending his petition after the expiration of the 120-day deadline and removing any allegations that Christus violated any standard of care for a hospital. Because only considering Sonnier's amended petition may result in impermissibly allowing the claim to be "split or spliced into a multitude of other causes of action," we must consider his original petition to determine whether "the gravamen or essence of a cause of action is a health care liability claim."[6] *Yamada*, 335 S.W.3d at 197.

## B.     Sonnier's Claims Against Christus Must Be Dismissed[7]

In his original petition, Sonnier alleged (1) that he was admitted as a patient to Christus to have a hernia repaired and (2) that, while he was under the care of Christus and its medical staff and while he was under anesthesia, certain members of Christus's medical staff engaged in offensive conduct. As a result, Sonnier asserted claims against Christus for intentional infliction of emotional distress, assault, and battery[8] and for vicarious liability for the conduct of its employees under the doctrines of *respondeat superior* and ratification. This shows that Sonnier's claims against Christus "[are] against a . . . . health care provider and [are] based on

---

[6]Our sister courts of appeals have reached a similar conclusion. *See Slayton*, 335 S.W.3d 382, 385–86 (considering allegations in original petition to find plaintiff filed an HCLC when post-deadline amended petition asserted only a premises liability slip-and-fall claim); *Lindsey*, 2013 WL 1456633, at *1, *4 (holding that, since original petition asserted HCLC, post-deadline amended petition asserting only assault and intentional infliction of emotional distress based on same facts "reflects the type of claim splitting expressly prohibited by *Yamada*").

[7]Sonnier's second amended petition joined Alcox, Davis, and Travis as defendants and asserted new claims against them. Alcox, Davis, and Travis are not parties to this appeal, and this opinion has no bearing on Sonnier's claims against those defendants.

[8]Although Sonnier alleges that the conduct of Christus's staff members was intentional, "the statutory definition of a health care liability claim does not distinguish between departures that are intentional or merely negligent." *Weems*, 575 S.W.3d at 366.

12

facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 256. As a result, Sonnier's claims against Christus are presumptively HCLCs. *Id.*

Even so, this presumption can be rebutted

if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Id.* at 257. Christus does not argue that the first two rebuttal factors have not been met. Still, the record[9] does not conclusively establish the third factor. In analyzing the record, we keep in mind that we should "focus[] on whether the gravamen of [Sonnier]'s complaint is a 'claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care.'" *Weems*, 575 S.W.3d at 364 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)).

In his original petition, Sonnier made several allegations that Christus, through its employees, departed from the expected standards of health care and safety. Along with alleging that as a patient he expected Christus to adhere to reasonable standards of care, Sonnier alleged that, while he was under anesthesia, Christus's employees placed a diaper on him "despite the fact that it [was] outside the standard of care for most hernia patients to be placed in a diaper post-surgery" and that they affixed a colostomy bag to him even though his procedure and

---

[9]Sonnier did not offer any evidence in the trial court, so the record consists only of the parties' pleadings, the motion to dismiss, the responses and replies, and the documents attached to the same.

13

recovery did not require him to wear a colostomy bag. These allegations recognize the possibility that, for at least some hernia patients, it is within the standard of care to be placed in a diaper post-surgery and that a colostomy bag may be required after some types of hernia surgeries. Thus, the gravamen of these complaints alleges a claimed departure from the accepted standards of medical care and health care.

In addition, Sonnier's bare allegation that he had a hernia repair does not inform us of what type of hernia he had, and no medical records were produced to establish the nature of his hernia. It is not within the general knowledge of a lay person to know whether in the repair of Sonnier's particular hernia, or because of Sonnier's reaction to the surgery or anesthesia, it would be within the standard of care to place him in a diaper post-surgery or to affix a colostomy bag. For that reason, expert health care testimony would be necessary to establish the appropriate standard of care regarding Sonnier's hernia surgery and his post-operative care. The Texas Supreme Court has held that, "if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012).

Sonnier's allegations could also be characterized as departures from accepted standards of safety. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see Williams*, 371 S.W.3d at 183 (examining whether the plaintiff's claims "may be characterized as HCLCs under the definition's 'safety' prong"). As referenced above, the Texas Supreme Court has construed the term "as the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm[,] or

14

loss.'" *Williams*, 371 S.W.3d at 184 (quoting *Diversicare*, 185 S.W.3d at 855 (quoting *Safety*, BLACK'S LAW DICTIONARY (6th ed. 1990))). While Sonnier was a patient under its care, Christus had a duty as a health care provider to provide for his safety. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015). This would include the duty to protect him from harm both while he was in surgery and under its post-operative care.

Finally, the gravamen of Sonnier's pleadings was that he was assaulted and suffered emotional distress because of the intentional conduct of Christus's employees while he was a patient of Christus and incapable of defending himself, for which Christus was liable either directly or vicariously. The facts pleaded by Sonnier could support allegations that Christus departed from accepted standards of safety by failing to protect him from harm while he was incapacitated by anesthesia. *See, e.g.*, *Diversicare*, 185 S.W.3d at 855 (finding that patient's allegations of assault by nurse could be characterized as departure from safety standards by the defendant nursing home); *Christus Spohn Health Sys. Corp. v. Sanchez*, 299 S.W.3d 868, 872, 874–75 (Tex. App.—Corpus Christi 2009, pet. denied) (finding that the gravamen of patient's allegations of sexual assault by nurse while she was recovering and allegations that hospital was liable for negligent hiring, supervision, training, and retention of its employees and vicariously liable for the acts of its employee was that hospital breached standards of safety by failing to protect her); *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 354–55 (Tex. App.—San Antonio 2008, no pet.) (same); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34–35 (Tex. App.—El Paso 2006, no pet.) (finding patient's allegations of sexual assault by nurse and

15

that mental-health facility was vicariously liable for sexual assault could be characterized as departure from safety standards by facility).[10]

Even so, "for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. In *Ross*, the Texas Supreme Court set out seven non-exclusive considerations that courts are to use in analyzing whether a safety standards claim is substantively related to the provision of medical or health care:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

---

[10]Sonnier cites several cases in support of his argument that we should consider his claims as assault, battery, and intentional infliction of emotional distress, and not as HCLCs. Yet, those cases are distinguishable. First, almost all of the cases were decided before *Loaisiga*, did not apply the *Loaisiga* presumption of an HCLC, did not analyze the factors to rebut the presumption, and were decided before *Williams* and *Ross*, in which the Supreme Court examined the safety prong of HCLCs. *See Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498 (Tex. App.—Texarkana 2011, pet. denied); *Nexus Recovery Ctr., Inc. v. Mathis*, 336 S.W.3d 360 (Tex. App.—Dallas 2011, no pet.); *Sanchez*, 299 S.W.3d 868; *Holguin* 256 S.W.3d 349; *Buck v. Blum*, 130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Jones v. Khorsandi*, 148 S.W.3d 201 (Tex. App.—Eastland 2004, pet. denied). In addition, in most of those cases, even if the claims against the individual defendants were not considered HCLCs, the claims against the institutional defendants were found to be HCLCs. *Sanchez*, 299 S.W.3d at 872; *Holguin* 256 S.W.3d at 354–55; *Buck*, 130 S.W.3d at 291. Also, *Khorsandi* involved only an appeal of the dismissal of a claim against an individual defendant. *Khorsandi*, 148 S.W.3d at 202. The one post-*Loaisiga* case cited by Sonnier was a claim by a non-patient asserted against only an individual doctor for alleged sexual assault and intentional infliction of emotional distress and did not involve the safety prong of an HCLC. *T.C. v. Kayass*, 535 S.W.3d 169 (Tex. App.—Fort Worth 2017, no pet.).

5.	Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6.	If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7.	Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505.  In any given case, only some of these considerations will apply, depending on the status of the claimant (i.e., patient, relative of patient, health care worker, other employee, visitor, etc.) and the circumstances under which the claim arose.

This case involves a patient who was under the care of Christus when the injury occurred. According to Sonnier's allegations, the offensive conduct took place while he was under anesthesia for a hernia repair, either while he was in surgery or in the recovery room after the surgery was complete.  So, considerations two and three should be answered in the affirmative. As discussed earlier, Christus had a duty to protect Sonnier from harm while he was under its care.  For that reason, consideration five should be answered in the affirmative.  The parties did not cite any applicable safety-related requirements set for hospitals or nurses by governmental or accrediting agencies, and we have found no applicable requirements for hospitals.  But the Texas Board of Nursing has promulgated unprofessional conduct rules that "are intended to protect clients and the public from incompetent, unethical, or illegal conduct of licensees."  22 TEX. ADMIN. CODE § 217.12 (2019) (Tex. Board of Nursing, Unprofessional Conduct).  Conduct prohibited by these rules includes "[c]ausing or permitting physical, emotional or verbal abuse or injury or neglect to the client."  22 TEX. ADMIN. CODE § 217.12(6)(C).  Since Sonnier has

17

alleged that Christus was vicariously liable for its nurses' conduct, consideration seven should also be answered in the affirmative. None of the other considerations are applicable to this case.

Since all of the *Ross* considerations applicable to this case yield affirmative answers, this indicates that the claimed departures from safety standards are substantively related to Christus's provision of health care to Sonnier and that Sonnier's claims were HCLCs. For that reason, and because Sonnier alleged departures from accepted standards of medical care and health care that would require expert testimony to establish, we find that the record does not clearly establish that "the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place." *Loaisiga*, 379 S.W.3d at 257. As a result, we find that Sonnier has not overcome the presumption that his claims against Christus were HCLCs.

Because Sonnier's claims against Christus were HCLCs, Sonnier was required to serve an expert report on Christus within 120 days after Christus filed its original answer. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Since Sonnier served no expert report on Christus and Christus moved to dismiss on that basis, the trial court was required to grant Christus's motion and to award it reasonable attorney fees and costs. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). For that reason, we find that the trial court erred when it denied Christus's motion to dismiss. We, therefore, sustain Christus's issues.

## V.    Conclusion

For the reasons stated, we reverse the trial court's order and remand this case to the trial court with instructions to dismiss Sonnier's claims against Christus and to award Christus

18

reasonable attorney fees and costs in accordance with Section 74.351(b) of the Texas Civil Practice and Remedies Code.

                                        Scott E. Stevens
                                        Justice

Date Submitted:      July 6, 2021
Date Decided:        September 3, 2021